126 753
130 303

## VANDERFORD v. THE STATE.

1. An application for a change of venue in a criminal case, on the ground of the existence of prejudice against the defendant, and that he can not obtain a fair and impartial trial in the county where he has been indicted, is addressed to the sound discretion of the presiding judge; and where the evidence is conflicting, his judgment will not be reversed, unless it appears that his discretion has been abused.

2. Where, in a criminal case, the accused was in custody, and by inadvertence a witness was placed on the stand and began to testify, and in a few minutes it was discovered that the accused was absent from the court-room, whereupon the presiding judge had him brought into court, withdrew from the consideration of the jury the small amount of testimony which had been given, warned them to give no consideration to it, and thereupon the examination was recommenced, and the witness, in the presence of the defendant, testified to the same matter which he had stated previously, there was no error in this proceeding, and it furnished no ground for the granting of a new trial to the defendant after conviction.

3. Where the court ascertained that the defendant's counsel knew that he was absent before the court discovered the fact, and the court certifies that in a low voice he said to counsel that the court was trying to give them a fair trial, but they did not seem to appreciate it; that this was said to counsel who sat directly in front of him; that in his judgment it could not have been heard by the jury; and that the court stenographer who was sitting between the court and the jury did not hear it, such remark will not require a reversal.

4. It is not necessary for the judge in charging a jury in a criminal case to make introductory remarks as to the importance of the case both to the State and the accused, but it is not error requiring a new trial for him to do so, provided what is said is not a misstatement of the law or calculated to prejudice the minds of the jurors against the accused.

5. Force is an element of the crime of rape, but it may be exerted not only by physical violence but also by threats of serious bodily harm which overpower the female and cause her to yield against her will.

6. There was no error against the defendant, requiring a new trial, in the charge of the court to the effect that a man can not be convicted of the offense of rape upon the testimony of the woman alone unless there are some concurrent circumstances which tend to corroborate her evidence; nor in the charge given touching such corroboration.

7. There is nothing in any of the other grounds of the motion for a new

48

trial which requires a reversal. The evidence amply sustained the verdict, and there was no error in overruling the motion for a new trial.

Argued October 16,—Decided November 14, 1906.

Indictment for rape. Before Judge Brand. Gwinnett superior court. June 11, 1906.

R. L. Vanderford was indicted for rape committed on the person of Pearl Helton. The evidence for the State showed, in brief, as follows: Pearl Helton was a girl fifteen years of age. On March 22, 1906, she was at the house of her sister who lived about a mile from the Helton home. Shortly after dinner the defendant appeared at the home of her sister and stayed some time. He inquired when Pearl intended to return home, and was informed that she would do so that afternoon. Soon after this was definitely stated, he left. About an hour before sundown Pearl and her sister, Mrs. Sells, left the house of the latter and started toward the home of the former. Between the two places there was a swamp through which the way passed. After going part of the way the sister turned back to return to her home. A short while after this, Pearl saw the defendant in front of her. He turned, met her, and asked her if she was not afraid to go through there by herself; to which she replied that her sister accompanied her a portion of the way. He then asked her if she was not afraid of negroes; to which she answered that she was not much so. He asked her if she was afraid of him. He seized her by the arm, dragged her about five steps from the path, and threw her down. She screamed and resisted. He put his hand over her mouth and said, if she screamed again and did not hush he would cut her throat. He threw her down and committed rape upon her. She admitted in her testimony that he told her to push down her drawers, and that she did so, but gave as her reason that he had threatened to cut her throat, and that she was afraid of him, fearing that he might kill or hurt her worse. After he had accomplished his purpose, he told her to fasten up her clothes, but she did not do so, and went on towards her home holding up her clothing with her hands. Her dress had become partly unfastened. Her screaming was heard by her sister, who was returning home. The latter went back toward the place whence the outcry came, and also heard a sound as if the girl were choking, and a man's voice, which sounded as if he were scolding. The sister fell, and

could not go further, and then returned to her house, and reported what she had heard. Her husband mounted a horse and went to the place indicated, but found no one there; but he overtook Pearl going across the field hurriedly. She turned and told him that she wanted him to kill Vanderford, the defendant, that he had gotten her down in the swamp. Her clothes were then unpinned, and she was holding them up. She made similar statements to others upon arriving at her home. When she reached there she was excited, and was screaming or crying. Her hair was partly down over her face, and there was trash and straw on her clothing. She was examined some days later by a physician, who discovered that her hymen had been ruptured, and that there was a discharge of bloody pus from the vagina. He also found bruises on her left arm, like finger prints. She was in bed and appeared to be very sore. Another witness testified that he found an irritated place on her mouth, which could have been made by the pressure of a hand. She remained in bed for six or eight days, or, as one witness said, about two weeks. At the place where she indicated that the crime had been committed, there were appearances of a struggle having taken place, and there were two indentations, as if made by the toes of a pair of shoes. The defendant is a married man with three children.

The accused undertook to prove an alibi, and also to show certain conflicting statements on the part of witnesses for the State, and certain facts not consistent with the testimony of some of them. He also sought to show that the girl had been to church with young men, and that one of them had left the neighborhood not long after the occurrence. In rebuttal the State introduced witnesses who testified to the good character of the girl for chastity; and a brother of the young man who had left the community testified that his leaving was for other reasons, and had no connection with the crime. The jury found the defendant guilty and recommended him to mercy; whereupon he was sentenced to the penitentiary for twenty years. He moved for a new trial, which was refused, and he excepted.

LUMPKIN, J. (After stating the facts.)

1. A motion was made for a change of venue, which was overruled. The evidence as to whether the defendant could get a fair and impartial trial in Gwinnett county was conflicting. The mat-

ter was one which addressed itself to the sound discretion of the presiding judge, and we can not say that he erred in the use of his discretion.      *Rawlins* v. *State,* 124 *Ga.* 31; *Young* v. *State,* 125 *Ga.* 584.

2, 3. The sixth ground of the motion for a new trial complains of certain occurrences on the ·trial, the material matters alleged being, that a witness for the State had been sworn and had testified for about five minutes when it was discovered that the defendant was not in court; that the court then stopped the trial, and had the sheriff bring in the prisoner, and asked his counsel whether they wanted the witness to repeat the testimony given, to which they replied that they had nothing to say one way or the other.   Whereupon, the court said, "Gentlemen, the court is trying to give you all a fair trial, but you don't seem to appreciate it."   The presiding judge did not certify this ground as set out, except with the addition of an explanatory note as follows: "After reconvening court, the witness, Dr. Fowler, was put on the stand by the State. He had been examined by the solicitor-general some three or four minutes when the court discovered that the defendant had not arrived from jail and was not present.   The examination of this witness was immediately stopped, and the court asked the question, 'Where is the defendant?'   Mr. Cooper remarked, 'We can not waive his presence.'   Trial of the case was suspended, and in a minute or two the officers arrived with the defendant.   The court then asked the defendant's counsel this question: 'Do you want him to go over his testimony, or just begin where Mr. Tribble left off?'   Mr. Cooper replied in these words: 'We have nothing to object to.   Go ahead; we do not care for that.'   The court replied, 'You don't require him to begin anew.'   Mr. Cooper answered, 'No, sir.'   Thereupon the solicitor proceeded to examine Dr. Fowler, beginning anew, when the court asked him why he did this; when Mr. Tribble replied that Mr. Cooper stated, 'We do not make any admissions or anything about his being absent.'   Whereupon the court turned and addressed the jury in these words, viz.:   Gentlemen of the jury, anything testified to by Dr. Fowler when the defendant was not in court will not be considered by you at all. Take that entirely from your minds.   Don't consider a single statement made by him when this man was absent.'   The solicitor then began with the witness, Fowler, and proved by him the same state

of facts to which he had testified during the defendant's absence. (All the above taken from the reporter's notes.) When the court ascertained that defendant's counsel knew the defendant was absent before the court discovered it for himself; the court, in a low tone of voice, used in substance the language excepted to, addressing counsel who sat directly in front of the court, which language in my judgment the jury could not hear. I am satisfied of this because the stenographer, who was sitting between the court and the jury, made no note of it, and states that he did not hear it. No objection was made to this remark, and it was made while waiting for defendant to come into court, and before the court asked counsel if they wanted Fowler to repeat his evidence. No motion to declare a mistrial was made by defendant's counsel for any reason whatever, as the allegations in this ground intimate was made." We might treat this ground as not certified to be true, and decline to consider it. But if the ground be decided upon its merits, an examination of the judge's note appended to the motion, as set out above, will show conclusively that no right of the defendant was violated. When the introduction of evidence had been inadvertently begun before the defendant was present, and this fact was discovered, the evidence already introduced was ruled out and withdrawn from the jury, the defendant was brought in, and the taking of testimony again begun in his presence. Without regard to the judge's statement that his counsel expressed a willingness to waive this, no error was committed, and no harm was done to the defendant. The note of the presiding judge also negatives the idea that his remark was made in the hearing of the jury, but shows that it was made in a low tone of voice privately to counsel. It could not have affected the jury.

4. The court gave a charge of some length calling the attention of the jury to the importance of the case, both to the State and to the accused, "to the State, because society is deeply interested in the maintenance, in the majesty and dignity of the laws, and the protection of its citizens; . . to the accused, because with him it is a question of life or death, of liberty or imprisonment," etc. This charge was assigned as error on the ground that it laid too much stress upon the majesty and dignity of the law and the protection of the citizens; that the jury might have concluded from it that the court thought the prisoner guilty; and that it at least stated the

gravity of. the case too strongly. These remarks in regard to the importance of the case both to society and to the accused were practically the same as those made by Judge Bull in his charge in the case of *Cobb* v. *State, 27 Ga.* 681, but no exception was taken to them in that case. It is not necessary for a judge in charging a jury to make introductory remarks as to the importance of the case, but the propriety of doing so under the facts of the case is discretionary, and we can not say that it is error, provided nothing said in the charge contains a misstatement of the law, or is calculated to prejudice the minds of the jury against the accused. Neither of these things appeared in the present case. Indeed the judge proceeded to impress upon the minds of the jurors the necessity for complete impartiality on their part. *Akridge* v. *Noble, 114 Ga.* 949.

5. In the eighth ground of the amended motion exception is taken to a charge which in effect instructed the jury that, if the girl alleged to have been raped, though resisting in the beginning of the alleged assault, afterwards consented to the sexual intercourse freely and voluntarily, and of her own will, they would not be authorized to convict the defendant; but that if she ceased to resist because of fear of violence and injury to her person, due to duress or intimidation of this character, which overpowered her will, then the failure to resist would not be counted against her, and if the defendant had carnal knowledge of her person against her will, under such circumstances, and by this means prevented her from further resistance, the jury would be authorized to find him guilty, if the case was otherwise made out. The ninth ground complains of a charge on the same subject to the effect that the terms "by force," as used in the statute, did not necessarily imply positive exertion of actual physical force in the act of compelling submission of the female to the sexual connection, but that force or violence threatened as a result of non-compliance, and for the purpose of preventing resistance or extorting consent, if it be such as to create a real apprehension of dangerous consequences, or great bodily harm, or to overpower the mind of the woman so that she dare not resist, is equivalent to force actually exerted; but that force, actual or constructive, is an essential element in the crime of rape; and that the jury must be satisfied, if she failed to resist, that her failure was due to threats of violence which had

the effect to overpower her will to resist, and that she failed to resist through fear of such threats. Both of these charges substantially informed the jury that force was a necessary element of the crime of rape, but that it might be exerted not only by physical violence, but also by threats thereof causing fear of serious bodily harm, which overpowered the female and caused her to yield against her will. This is the law.

Section 93 of the Penal Code defines the crime of rape thus: "Rape is the carnal knowledge of a female, forcibly and against her will." This declares that the act shall be done forcibly and against the will of the female, in order to constitute the crime, but does not state in terms what character of force will suffice. In Rapalje and Lawrence's Law Dictionary rape is thus defined: "In criminal law, rape is the act of having carnal knowledge of a woman against her will or without her conscious permission, or where her permission has been extorted by force or fear of immediate bodily harm." This definition has been approvingly cited in *Gore* v. *State*, 119 *Ga.* 418. In Bailey v. Commonwealth, 82 Va. 107, it was said: "The law requires that the unlawful carnal knowledge shall be against her will. She must resist, and her resistance must not be a mere pretense, but must be in good faith. She must not consent. If she consent before the act, it will not be rape. But as to this consent, we may observe that it must be a consent not controlled and dominated by fear. . . A consent induced by fear of bodily harm or personal violence is no consent; and though a man lay no hands on a woman, yet if by an array of physical force he so overpowers her mind that she dares not resist, he is guilty of rape by having the unlawful intercourse." A writer in 13 Crim. Law Mag. (Mr. D. R. N. Blackburn) 503 et seq. discusses the subject of rape, and collates numerous authorities. See also People v. Dohring, 59 N. Y. (14 Sickles) 374. The other complaints, that the charge was argumentative, without foundation in the evidence, misleading, etc., were without merit.

6. The court gave certain charges based on the opinion delivered by the majority of this court in *Davis* v. *State*, 120 *Ga.* 423. Among other things, Chief Justice Simmons said (p. 435): "The accused could not be convicted upon the woman's testimony alone, however positive it may be, unless she made some outcry or told of the injury promptly, or her clothing was torn or disarranged, or

her person showed signs of violence, or there were other circumstances which tend to corroborate her story." The Justices are divided in opinion as to whether corroboration of the evidence of a person alleged to have been raped was necessary; and if so, whether there was sufficient corroboration in that case. But without discussing the two views, if that of the majority be accepted, and if the court should charge the jury on the subject as a rule of law, the better plan would be to inform them that the accused should not be convicted upon the testimony of the woman alone, unless corroborated by circumstances. He may then call attention, if the evidence authorizes it, to whether there was any outcry by the woman or not, or whether she told of the injury promptly or not, or whether her clothes were torn or disarranged or not, or whether her person showed signs of violence or not, or other circumstances as to which there may be evidence, and inform them that such matters are for their consideration along with the other evidence, in determining whether the testimony of the woman was corroborated or not. The charge of the court on this subject, in some sentences of it, may not have been entirely free from liability to verbal criticism, but upon the whole we do not think that there was any error in it requiring a new trial. He did charge that "A man can not be convicted of the offense of rape on the testimony of the woman alone, unless there are some concurrent circumstances which tend to corroborate her evidence;" and further on instructed them to "inquire, then, if there are any concurrent circumstances which tend to corroborate her testimony; look to the evidence; and if so, what are they?" If the opinion apparently entertained by Mr. Justice Candler in the *Davis* case, that under an indictment for rape a conviction can be had upon the testimony of the woman alone, without corroboration, should be accepted as correct, then the charge of the judge in the present case was more favorable to the accused than he had any right to ask. Under either view, a careful consideration leads us to the opinion that the charges on this subject do not render a reversal necessary.

7. There is nothing in any of the other grounds of the motion which requires a reversal. The sentence imposed furnished no ground for a motion for a new trial. The evidence amply sustained the verdict, and we see no reason why it should not be allowed to stand. *Judgment affirmed. All the Justices concur.*