## 20854. WALKER *v.* THE STATE.

Candler, Justice. Cecil Walker and Marvin Walker were jointly indicted in Whitfield County for the murder of Oscar Parks. Cecil Walker was convicted of the offense charged without a recommendation, and was sentenced to be electrocuted. The exception is to a judgment denying his amended motion for new trial. *Held:*

1. Since the evidence was amply sufficient to support the verdict, there is no merit in the general grounds of the motion for new trial. See *Walker* v. *State,* 215 *Ga.* 128 (109 S. E. 2d 748), which is a prior appearance of this case.

2. One of the special grounds of the motion alleges that a new trial should be granted movant because the bailiffs who were placed in charge of the jury for two nights during the trial did not keep the jurors together nor remain with them at all times, as they were required by law to do, which fact was unknown to the movant or his counsel until after the rendition of the verdict against him. As proof of this allegation, such bailiffs by separate affidavits testified that they had charge of the jury for two nights during the trial of movant; that they took them to the Hotel Dalton, where rooms were procured for them; that from two to four jurors were placed in a room, but on separate floors of the hotel; that they (the bailiffs) secured a different room for themselves, where they slept during the night; and that they and the jurors, according to previous arrangement, assembled in the lobby of the hotel on the following mornings. The movant and his counsel by affidavits testified that they had no knowledge of such separation and supervision of the jury until after the case was concluded by verdict. As and for its only counter-showing, the State introduced an affidavit from all of the jurors whereby each testified that half of the jurors occupied rooms on the second floor of Hotel Dalton and the other half had rooms on the fourth floor of the same hotel; that one court bailiff had charge of the jurors on the second floor and a different bailiff was placed in charge of those on the fourth floor. Each juror testified that nothing transpired in the hotel on either night they were quartered there which affected or influenced him in any way in reaching the verdict returned in the case; that the case was not discussed or considered by the jury during the periods they were quartered in the hotel; and that no one discussed or attempted to discuss the case with him or any other member of the jury at any time while they were so quartered. Their affidavit is completely silent as to whether or not they were constantly attended by a bailiff or bailiffs while so quartered. In these circumstances, and following the rulings in *Blount* v. *State*, 214 *Ga.* 433 (4) (105 S. E. 2d 304), and *Allen* v. *State*, 215 *Ga.* 455 (1) (111 S. E. 2d 70), it must be and is held that the jury, during the periods mentioned above, was not kept together and attended by a bailiff or bailiffs in the manner required by law, and such non-compliance with the law requires this court to order a new trial. In the *Blount* and *Allen* cases, supra, the State made a counter-showing very

similar to the one made in this case, but, as this court there held, such a showing does not satisfy the requirement that the jury be kept together and that the bailiff placed in charge of the jury remain with them and stay awake at all times while he has charge of them.

3. Over an objection, timely made by counsel for the accused, that they were prejudicial in nature, highly inflammatory, not illustrative of any issue involved in the case and with but little variation of detail, the court permitted the solicitor-general to introduce in evidence several photographs of the deceased which were taken soon after his death. The court also allowed the solicitor-general to introduce in evidence two pistols over an objection that they had not been properly connected with the commission of the offense for which the accused was being tried. We see no error in this. The indictment alleges that this defendant and Marvin Walker killed the person named therein (Oscar Parks) by shooting him with a pistol. The photographs show several pistol-shot wounds on the body of the deceased and the location of each, and an expert witness for the State testified that the wounds so depicted were the direct cause of Mr. Parks' death. As to the pistols allowed in evidence, a witness for the State testified that the accused (Cecil Walker) freely and voluntarily stated to him that he shot the deceased with one of the pistols and that Marvin Walker shot him with the other one.

(a) Both as to the photographs and the two pistols which were allowed in evidence, it was not erroneous, as the movant contends, for them to be sent out with the jury as a part of the State's evidence and remain with the jury during its deliberation of the case.

4. Another special ground alleges that the trial judge erred in charging the jury on confessions of guilt, the contention being that such a charge was unauthorized by the evidence which the State introduced on the trial. To this we do not agree. Respecting such contention, the evidence shows: That the accused and his co-indictee each freely and voluntarily stated to the Sheriff of Whitfield County and one of his deputies that they were traveling north in an automobile and stopped about 5:15 a.m. at a filling station out of Dalton, Georgia, where the deceased worked. They were out of money and gasoline. They asked the deceased to fill their tank with gasoline, which he did. While he was servicing their car, they planned to rob

him. After the tank was filled, they pointed a pistol at him, seized him, threw him in their car and drove away. They proceeded north for a few miles and turned off on a side road which led to a mill pond. They parked their car on a ramp at the mill pond. There they robbed him, taking all of the money he had on his person, and one of them hit him on the head with a pistol, thereby inflicting a severe wound. They then tied his hands behind him with his belt and pushed him off the ramp into the mill pond. Each then began to shoot him with a pistol and continued to do so until he sank into the water. They then divided his money equally between themselves and went on to Cleveland, Ohio, where they were later arrested. The evidence also shows that the body of the deceased was found in the mill pond a few hours after the killing with his hands still tied behind him. An autopsy revealed that he was shot three times, one bullet struck him in the temple and went straight through his brain. On his trial the defendant made the following statement to the jury: "I had been driving all night that night and it had wore me out, I couldn't think what I was doing until it was too late; until I realized what I had done then I couldn't go back and straighten myself out, I know I hate the thing as bad as anybody do, because I couldn't think at the time I was doing this; I just couldn't think what I was doing. I know a lot of boys makes mistakes, and some of them makes mistakes like this and some of them don't, but I know what I done, I just couldn't think at the time I was doing it, though, and I ask you all for the mercy of the court; have mercy on me, give me a chance." The State's evidence and the defendant's statement to the jury each authorized the charge complained of. See *Weatherby* v. *State*, 213 *Ga.* 188 (97 S. E. 2d 698), and the several cases there cited, which hold that a charge on confessions of guilt is authorized when the accused has freely and voluntarily admitted the commission of the act which produced the death of the person killed, and in connection therewith stated no facts or circumstances showing excuse or justification for the homicide.

(a) A confession of guilt freely and voluntarily made without any hope of reward or the remotest fear of punishment by one accused of crime is not rendered inadmissible against him simply because he was then in custody and had not been furnished counsel before such statement was made by him.

5. Since the remaining special grounds of the motion for new trial do not raise questions which are likely to occur on the next trial, it is not necessary to deal with them. But for the reason stated in division 2 of the opinion, the court erred in denying movant a new trial.

*Judgment reversed. All the Justices concur.*

ARGUED APRIL 11, 1960—DECIDED MAY 5, 1960.

*James H. Phillips, Robert L. Vining, Jr.,* for plaintiff in error. *R. F. Chance, Solicitor-General, Eugene Cook, Attorney-General, Rubye G. Jackson, Assistant Attorney-General,* contra.