21096.   EPPS v. THE STATE.
21097.   ALFORD v. THE STATE.
21098.   JOHNSON v. THE STATE.

SUBMITTED JANUARY 9, 1961—DECIDED FEBRUARY 9, 1961—RE-HEARING DENIED FEBRUARY 23, 1961.

*James E. Weldon, L. M. Wyatt,* for plaintiffs in error.

*Wright Lipford, Solicitor-General, E. W. Fleming, Solicitor, Eugene Cook, Attorney-General, Rubye G. Jackson, Assistant Attorney-General,* contra.

MOBLEY, Justice.   1.   With the exception of certain evidence as to the good character of the defendants Alford and Johnson, the evidence on this second trial of these defendants was substantially the same as that presented at the first trial.   Since a statement of the facts was not given in the first opinion of this court, cited above (215 Ga. 839), a resume of the material evidence presented at the second trial is given below:

At about 10:30 on the night of July 31, 1959, the prosecutrix, a married woman, and her female companion went to Tanglewood, a dine and dance establishment near LaGrange, Georgia. The prosecutrix testified that her husband was to come later, and she and her companion were to go home with him.   He did not come, so they procured a ride with Aaron Brooks and Bonney

Grizzard, paying Brooks one dollar for the ride. On the trip home, Brooks stopped the car, and he and Grizzard attempted to have sexual relations with the women, but they were refused. Brooks and Grizzard testified that they thought they could go with the women, as they had heard that they would. As they neared LaGrange, a Chevrolet pickup truck passed them and slowed down. When they attempted to go around the truck, the driver of the truck pulled over in front of the car and would not let it pass. This happened two or three times. Then Brooks, whose car had no reverse gear, turned in the street to let his car back to the side, planning to turn around. The truck backed in front of him and blocked him. Epps and Johnson got out of the truck, and Epps approached Brooks and demanded his money. Brooks gave him his pocketbook. Epps then asked who was in the car, and Brooks told him. While this conversation was going on, Grizzard and the two women jumped out of the car and ran up the street, which was in a neighborhood of apartment houses. Grizzard hid in some shrubbery around one of the houses, and the women ran on up the street. They met Robert Hubbard and Hubbard's girl friend, and asked them where a telephone could be found. At that time an automobile passed driven by Horace Lawson. Hubbard hailed the car, and the two women and Hubbard and his girl friend got in Lawson's car and started towards the police station. The pickup truck driven by Epps, which was headed in the opposite direction, turned around and followed the Lawson car, running up behind and bumping it several times. When Lawson attempted to turn into a street, the truck ran up on the side and blocked him. Lawson then tried to outrun the truck, but the truck ran into his car knocking it into a ditch. Epps got out of the truck, drew a knife on Lawson, threatened to cut his throat, and told him to get out of the car and to tell the women to get out. Johnson grabbed the girls and told them to get in the truck. They were crying and pleading with the defendants not to take them. Epps took the keys to Lawson's car and drove off with the two white females, saying they would be back. Johnson and Alford were also in the truck. Lawson and Hubbard went to a telephone and called the State Patrol to report the incident. Brooks and Grizzard reported the

incident to the LaGrange police. After about an hour, Hubbard testified that the pickup truck returned, and that his keys were put back in his car.

The prosecutrix testified that Epps drove the truck out in the country, and that during the drive Johnson tore her brassiere and panties off; that Epps stopped the truck; that she didn't want to get out, but Johnson kind of shoved her and slapped her and she fell; that Johnson had intercourse with her, to which she did not consent; that, after Johnson had finished, Alford attempted to have intercourse with her, but he did not succeed; that Epps then had intercourse with her, with Johnson sitting on her head holding her; that they threatened them and said they would kill them if they did not submit to their demands; that Epps made them get back in the truck, and they drove out another country road to a place close to a church and near a cornfield, where Epps and Alford had intercourse with her; that the actions of the defendants in having intercourse with her were without her consent, and she submitted because she was scared.

The companion of the prosecutrix testified to substantially the same facts concerning what occurred up to the time the truck stopped out in the country and as to what happened after they returned and were put out of the truck at Edgewood Avenue. On objection by defense counsel, the trial court excluded her testimony as to what happened to her at the two places out in the country where she and the prosecutrix had been taken by the defendants.

The prosecutrix testified further that, at the second time the truck was stopped, she talked to Epps about meeting him again; that "we promised if they would let us go that we would meet them at some graveyard. . . I told him that because I was scared"; that at or near the places where she had been assaulted, she threw some of her clothes out the window of the truck so as to identify such places; that, at about daylight, Epps put them out on Edgewood Avenue: that she and her companion walked to her employer's place and got him to take them home; that she told him that they had had a rough time that night, but did not tell him right then what had happened; that he talked too much and she did not want anyone to know it right then; that she

was too tired and scared to go to the police station right then; that they went home, washed and cleaned up; that, about 8 o'clock a. m., the police came and took them to the police station where she talked with Sheriff Bailey of Troup County.

A number of articles, including women's clothing, were introduced in evidence and identified as having been found at the two locations pointed out to the sheriff as being where the assaults took place.

Sheriff Bailey testified that the prosecutrix made a complaint to him of an occurrence that happened to her, and that the complaint was made sometime during the morning hours between the time he got to his office at 6:30 or 7 a. m. and noon of that same day. He identified the articles of clothing, and others, as having been located at and near the scenes pointed out to him by the prosecutrix and testified that he saw tracks at those places and that the grass was flattened.

The Sheriff of Coweta County testified that George Alford, Jr., told him that he had intercourse with the chunky one against her will; that the defendants referred to the women as the small one and the chunky one.

Evidence of the good character of George Alford, Jr., and Clifford Johnson was introduced by them, and each of the defendants made an unsworn statement. Epps stated that he had been to bed with the prosecutrix prior to the incident in question; that he paid her five dollars; that he had been with her three or four times; that he did not rape her; that he did not block the car; that "those colored fellows was trying to get the girls for themselves"; that the argument was between them and that was why they reported it to the police; that there was "no disagreement between the white ladies and us." Johnson stated that "it was an arrangement from Epps that we pick up these white girls"; that he assumed that Epps was driving and "acting like that on arrangements which they previously made"; that he didn't force anyone to do anything against her will; that "the women was paid to do what they was doing." Alford stated: "I'm not guilty of rape. I've never taken advantage of a girl before in my life. And I didn't on the night they complained of." He also read a letter from the "Clerk of the Court, Montgomery County,

Ohio" wherein he stated that it was alleged that an examination of the records of the juvenile court, police records of Dayton, Ohio, and the prosecutor's attorney's office of Montgomery County, had been made, and no record had been found of any act involving Alford.

The defendants did not deny that they had had carnal knowledge of the prosecutrix, but contended that such had been done with her consent.

The evidence supports the verdict, and there is no merit in the general grounds of the amended motion for new trial.

2. Special grounds 4, 5, 7, 8, 9, 10, 12, 15, and 17 involve the admission of certain evidence over objection by defense counsel.

a. Special grounds 4, 5, and 17 fail to show what evidence was illegally admitted, and for that reason are incomplete and insufficient to present any question for consideration by the court.

b. The statement of the prosecutrix complained of in special ground 7—that "I was scared", as being the reason why she submitted to intercourse with the defendants—was not a conclusion on her part but was a statement of a fact, and it was not error for the court to overrule the defendants' objection to this evidence on the ground that it constituted a conclusion.

c. The objection in special ground 8 to the testimony of the prosecutrix, that "Johnson had intercourse with me on the ground right next to the tire. I don't know why he had intercourse with me. I didn't consent to it," on the ground that it was "introduced purely for prejudicial reasons and it's a conclusion," is without merit, as the evidence was relevant to the issues on trial and was not a conclusion.

d. In special ground 9, it is alleged that the court erred in admitting testimony of the prosecutrix, as follows: "I did not consent to any of these intercourses," over the objection that this was a conclusion and was offered for prejudicial reasons. Special ground 10 objects to the admission of the following testimony of the prosecutrix: "Q. Did you consent to it? A. No, sir," on the ground that same constituted a conclusion. Obviously, each of these grounds is without merit.

e. The evidence of the companion of the prosecutrix, to the effect that she had intercourse with Epps and with Alford be-

cause she was scared, was not subject to the objection made that such testimony constituted a conclusion. Immediately prior to such testimony, she testified: "Epps got me out of the truck. He pulled me up on the back of the truck. He told me if I didn't give in he would kill me. He had his knife there in his hand. I was on the back of the truck when he told me that. He started to tearing my clothes off. Yes, sir, that's where he tore my slip off. He had intercourse with me. I had intercourse with him because I was scared." Special ground 12 is withour merit.

f. In prosecutions for rape, when the complaint made by the injured female does not constitute a part of the res gestae, the details or particulars of the complaint cannot be introduced in evidence, in the first instance, by the State. On direct examination the State can prove the fact that a complaint of the injury was made by the injured female, and when and to whom she made it; and these facts can be shown either by the injured female or by the person to whom she complained. *Stephen v. State*, 11 Ga. 225 (8); *Lowe v. State*, 97 Ga. 792 (25 S. E. 676); *Thomas v. State*, 144 Ga. 298 (4) (87 S. E. 8); *Huey v. State*, 7 Ga. App. 398, 400 (66 S. E. 1023). The testimony of the Sheriff of Troup County—that the prosecutrix made a statement and complaint to him of an occurrence that had happened to her, and that such statement was made to him sometime after he went to his office at 6:30 or 7 a. m. and before noon of the day (August 1, 1960) on which the evidence shows that the incident occurred between about 2:30 a. m. and sunrise—was admissible; and the trial court properly overruled the objection thereto. Special ground 15 is without merit.

3. Grounds 2, 3, and 13 complain that the trial court, by certain statements made in the presence of the jury, intimated or expressed an opinion as to what had been proved. A careful reveiw of each of these grounds discloses that the court did not express any opinion or intimation as to what had been proved, and these grounds are without merit.

4. Special grounds 1, 6, and 11 complain that the trial court refused to allow defense counsel to cross-examine thoroughly a named witness.

a. As to ground 1, the record shows that, after an objection

by the solicitor-general, and after a colloquy between counsel, the court stated to defense counsel: "Go ahead, Mr. Weldon." The court did not restrict counsel in his cross-examination of the witness, but told him to "Go ahead," or in other words, to proceed with the examination. This ground is without merit.

b. In special ground 6, complaint is made of the following: Defense counsel asked a witness: "I just ask you to answer my question. Did he turn on Revis Street." The witness answered: "I said he tried to turn on Revis Street." The solicitor-general said: "Your Honor, he's asked that four times." The court stated: "Go to something else. She says he tried to cut on Revis Street but couldn't." The subject matter of the question had been fully covered, and there was no undue restriction of the right of cross-examination. This ground is without merit.

c. In response to a question on cross-examination, as to whether she and her companion made an outcry after leaving the car in which they had been riding with Brooks and Grizzard, the prosecutrix answered: "No sir, wouldn't do no good." Counsel for the defendants objected to the answer on the ground that it was not responsive to his question. The court stated: "Mr. Weldon, she has the right, after she answers your question, to make any explanation she wished," and instructed counsel to go ahead. After a further colloquy between counsel and the court, the court stated: "I ruled on it. Go ahead." This ground fails to show any improper restriction of the right of cross-examination, and is therefore without merit.

5. In special ground 14 objection is made to the admission of certain pictures on the ground that the photographer testified that he had enlarged the pictures and that this made the items appear larger than they actually were, and on the further ground that the pictures were not true and correct representations of what they purported to represent. The ruling made on the first trial of this case, that the pictures were admissible, did not become the law of the case in the cases now under consideration, because in the second trial counsel objected to the admission of the pictures on grounds different from those interposed on the first trial.

The witness who identified the pictures testified that he made

them, and as to each he stated that the picture "is a true and correct pictorial representation of the facts portrayed in the picture." On cross-examination he testified: "The pictures were enlarged from a four-by-five negative. It will make them appear larger than they all actually are because the dimensions are larger." The court in admitting them stated: "Well, I think they would be admissible for showing what they show."

This evidence is not susceptible to the interpretation given it by counsel for the defendants. What the witness said was that the pictures had been enlarged from a four-by-five negative and that enlarging the pictures "will make them [the pictures] larger than they actually are because the dimensions are larger." He did not say that the objects in the pictures appear larger than the objects actually are, and in fact reference to the pictures of the Chevrolet pickup truck and the Chevrolet automobile show clearly that there is no distortion or enlargement of the objects in the pictures. This ground is without merit.

6. In special ground 18 exception is made to the following portion of the court's charge: "But, if you find that the consent was not given to the sexual act or acts, if they were accomplished, and that the consent was not given on account of any force or fear of death or duress and intimidation at the time of the act or acts, but she yielded to the act or acts under those circumstances, not voluntarily and without consent but through fear of bodily harm, such as will prevent the yielding of her consent, then, gentlemen, that would be force within the meaning of our law." The exception to this charge is that it was argumentative, misleading, and confusing to the jury and erroneous because it stated an incorrect principle of law.

Immediately preceding the charge complained of, the court had charged that rape is the carnal knowledge of a female forcibly and against her will; that "Against her will" is the equivalent of "without her consent"; that, if the female at any time yielded her consent to the act, the defendants could not be convicted; that the jury should look to the evidence and the defendants' statements and determine whether the defendants had intercourse with the prosecutrix and, if so, whether the act or acts were accomplished through force. The charge complained of, when

considered in context with the charge immediately preceding it, is clear and is not misleading or confusing. See *Harris v. State,* 191 Ga. 243 (18) (12 S. E. 2d 64). Any verbal inaccuracy in the language of the charge would neither have confused nor mislead the jury, as the court made it plain that, if the female consented to the act or acts of intercourse, it would not be rape, but, is she yielded to the act or acts through force, fear of death, duress or intimidation, not voluntarily but through fear of bodily harm, such would not be consent but would be force within the meaning of the law. See *Vanderford v. State,* 126 Ga. 753 (55 S. E. 1025) ; *Bonner v. State,* 206 Ga. 19 (2) (55 S. E. 3d 587). There is no merit in this special ground.

7. It is contended in special ground 19 that it was error for the court to charge: "Now gentlemen, you understand that the State denies that the female was a woman of bad character," on the ground that the State did not deny that the prosecutrix was a woman of bad character, in that the State offered no evidence of her good character, but argued that a woman of bad character could be raped. The evidence authorized the charge. First, there is no admission by the State that the prosecutrix was an unchaste woman or that she had a bad reputation for chastity. The evidence as to her character was developed as follows: The State brought out on direct examination of Aaron Brooks and Bonney Grizzard that on the trip from Tanglewood to LaGrange they tried to get the proxecutrix and her companion to have sexual relations with them, but the females refused. The prosecutrix was riding in the back seat with Grizzard, who testified on direct examination: "We stopped nearly about to the end of Edgewood up there on that hill before you get to the highway and tried to go with them . . . We were not successful. They refused us." The following evidence was elicited from Grizzard on cross-examination: "I wanted to get in her pants. I never heard that she went with other men. I never heard that she went with another man. I just thought I could go with her. . . I knew they would go with men, and I was trying to take advantage of the proposition. I didn't go out with them. I just tried to . . . based on what people said about [the prosecutrix] I figured I could make the grade." Brooks testified: "I just heard you could go with them."

The State, on direct examination of the prosecutrix and her companion, developed that Brooks and Grizzard tried to go with them and that the females refused. In addition to the foregoing evidence, the defendant Epps in his statement related that he had paid the prosecutrix five dollars on one occasion to go with him and that he had been with her three or four times previous to the incident for which he was being tried. An issue as to the character of the prosecutrix was raised by this evidence, which authorized the charge complained of. Special ground 19 is without merit.

8. An exception to an entire charge is not good unless the whole charge is subject to the exception made. *Callahan v. State*, 209 Ga. 211 (5), (71 S. E. 2d 86) and cits. The charge in this case was not erroneous in its entirety as contended in special ground 20. There is no merit in the defendants' contention that the trial court failed to charge the jury that they were authorized to render a different verdict as to each defendant, for the court explicitly charged with reference to the verdicts that could be found against each defendant and the different forms of the verdicts that could be returned as to each defendant. Special ground 20 is without merit.

9. Special ground 21 alleges that "the bailiffs in charge of the jury failed to remain with the jury at all times while the jury was in the care of these bailiffs, which was unknown to defendants or their counsel until after rendition of the verdict in said case." The evidence submitted in support of this ground fails to show that the bailiffs did not remain with the jury at all times while the jury was in their care, but on the other hand shows: that the bailiffs remained with jurors while they spent the night at a named motel; that the jurors slept in six rooms, with two jurors in each room; that the three bailiffs who had charge of the jury during the first part of the night remained outside of the rooms of the motel where the jurors were kept until midnight, at which time they were relieved by three other bailiffs who occupied a position outside the rooms and outside the building where the jurors were located; that the jurors were in their rooms and in retirement and sleeping with the doors to their rooms closed. There is no showing that the bailiffs did not stay awake and on

watch over the jurors throughout the night, or that they failed to perform any of their duties as prescribed by law. *Code* § 59-717. In *Blount v. State,* 214 Ga. 433 (4) (105 S. E. 2d 304); *Allen v. State,* 215 Ga. 455 (1) (111 S. E. 2d 70); and *Walker v. State,* 216 Ga. 15 (2) (114 S. E. 2d 431), relied on by the defendants, the evidence showed that the bailiffs went to bed in a separate room from the jurors and went to sleep, which was the basis for the ruling made in each of those cases that the jury had not been properly attended. While counsel argues in his brief that it was error for the jurors to sleep in separate rooms, this point was not raised in the motion for new trial, has not been passed on by the trial court, and is not now before this court for consideration. Special ground 21 is without merit.

*Judgment affirmed. All the Justices concur.*