21697. SMITH v. THE STATE.

ARGUED JUNE 12, 1962—DECIDED JULY 9, 1962—
REHEARING DENIED JULY 23, 1962.

*William Wisse, George Kushinka, Walker D. Burke,* for plaintiff in error.

*Wm. M. West, Solicitor General, Jack J. Gautier, Assistant Solicitor General, Eugene Cook, Attorney General, Rubye G. Jackson, Assistant Attorney General,* contra.

GRICE, Justice. Sammie Lee Smith, found guilty of murder without a recommendation and sentenced, assigned error upon the denial of his motion for new trial. He was indicted by the grand jury of Houston County for the July 10, 1960, murder of Jerry Cooper and was tried in the superior court of that county on August 24 and 25, 1960.

The victim, an elderly man, was found dead in his home in the City of Perry, Houston County, on the late afternoon of July 10, 1960, by a neighbor. His body, clad partially in pajamas, was lying on the floor in his bedroom with considerable coagulated blood leading from his throat. Summoned to the scene immediately were the coroner, law enforcement officers and the county medical examiner. The latter testified upon the trial that the cause of death was a wound extending entirely across the upper portion of the neck, made by a "pretty good sized knife." He estimated that death had resulted within some seven minutes and had occurred between 13½ and 14 hours previous to his examination, which was at approximately 7:30 p.m. on July 10, 1960.

The defendant first denied being in the locality for the several days preceding and following the crime but later admitted he stabbed Cooper several times with a knife. He persisted in this admission but his versions as to what prompted the stabbing varied. The version upon which he relied at the trial was self-defense. In this he contended that at some time between midnight and dawn of Sunday, July 10, 1960, he went to Cooper's house, knocked, awakened him, entered the door Cooper opened, played cards with him, won his money and received his watch in pawn; and that when about to leave he was assailed by Cooper hitting him with a chair and, finding a knife in the room, picked it up, cut Cooper several times and left.

His other version, given in an oral statement to officers and relied upon by the State at the trial, was one of burglary, robbery and murder. In urging that this was the correct version, the State relied upon the defendant's losing his money in a

card game earlier that night, his presence in the vicinity of Cooper's house at the estimated time of death, a freshly cut screen from Cooper's bedroom window, the defendant's possession of Cooper's watch shortly after the homicide, and a statement by the defendant which was consistent with this contention.

Testimony and documentary evidence as to the victim's body when found, physical facts at the scene of the homicide, testimony as to the facts referred to in the preceding paragraph, and the admission and confession of the defendant constituted the evidence submitted by the State. The defense introduced evidence regarding the defendant's conduct and activities immediately before and after the killing and the defendant made an unsworn statement setting up his self-defense contention, as already indicated. Apparently there were no eyewitnesses to the homicide.

Following the jury's verdict of guilty and sentence by the court, the defendant filed his amended motion for new trial consisting of the general and six special grounds.

Number four of the special grounds, urging refusal of the court to permit the defendant to be asked questions by his counsel, was disapproved, the trial judge reciting that "there was no motion or request by counsel for movant in open court to propound questions to movant during the course of his statement to the court and jury." In the brief filed in the defendant's behalf counsel acknowledged that, for the foregoing reason, this ground cannot be urged. Accordingly, it will not be considered.

Special ground 6, averring that the court erred in charging that "proof of the corpus delicti, that is, proof that a crime has been committed as alleged in the indictment by someone may be sufficient corroboration of a free and voluntary confession; but I charge you that in all cases the amount of corroboration of a confession which is necessary to authorize a conviction is a question solely for the jury to determine," was not unconditionally approved by the trial judge. His order recited that "Special Ground Number 6 of the foregoing amended motion for new trial is certified as approved subject to the following certification and note of the court: The entire charge of the court on the subject of confessions was given by the

court at the specific written request of counsel for movant. The portion of the charge as is set out and quoted in this ground of the amended motion was given verbatim by the court as requested in writing by counsel for movant." Under these circumstances, in view of repeated rulings, this ground presents nothing for review. *Andrews v. State,* 196 Ga. 84 (11, 14) (26 SE2d 263).

Remaining for determination are the general grounds, a special ground relating to alleged improper handling of the jury during an overnight recess, a special ground complaining of the court's charge to the jury, one urging that the court should have charged upon involuntary manslaughter, and one insisting that it erred in admitting into evidence incriminatory statements and confessions of the defendant.

■ We first assess the general grounds. The evidence recited above as the basis of the State's contentions, including the defendant's admission and confession as ruled admissible in Division 5 of this opinion, amply support the jury's verdict which has the approval of the trial judge. Those grounds are, therefore, without merit.

■ Special ground 1, complaining, in several particulars, of improper handling of the jury during an overnight recess, involves no substantial dispute as to the facts but diverse conclusions from those facts. The trial judge recited that the State's counter-showing as to these complaints was without conflict with any evidence offered by the defendant and was true and correct. He found that no irregularities or misconduct took place and ruled that this ground was without merit.

■■ The contentions as to separation of the jury and attendance by the bailiffs are inter-related and may be treated together. The gist of them is that the jury did not remain together in one room during the overnight recess but occupied several different rooms on the same floor of a hotel, and although a bailiff was stationed in the hallway into which all such rooms led, the room doors remained closed during the night and, therefore, a bailiff was not in attendance and remaining with the jury, as the law requires.

From the affidavits submitted, the trial judge was authorized

to find as follows: that there was no place, with beds and other necessary facilities, available in the county where twelve jurors could be housed overnight in one room; that the jury were assigned to and occupied eight rooms on the third floor of the New Perry Hotel; that two bailiffs were assigned two adjoining rooms; that all of the foregoing rooms were located on one hallway on the third floor of his hotel; that the connecting rooms occupied by the jurors connected only with rooms occupied by other jurors; that the foregoing housing separated the jury from other persons and any outside influences; that the only exit from rooms thus occupied by the jurors was through doors opening into the hallway; and that one of the two bailiffs was stationed in this hallway and remained awake at all times while the jurors were so housed.

The above factual situation poses the two questions—was this jury kept together, and was it attended by a bailiff in the manner required by law? We believe that prior holdings of this court in dealing with similar facts require an affirmative answer to both of these questions.

In *Blount v. State*, 214 Ga. 433 (4) (105 SE2d 304), two complaints were made. The first was that while the jury was in recess overnight the jurors were separated, six being placed in one room and six in another. As to this, it was held: "Under the circumstances appearing in this case by affidavits from both the defendant and the State, it was not error to place the jurors in two separate but adjoining rooms in a motel." The second complaint in the *Blount* decision was that the bailiff in charge of the jury went to a room separate and apart from the jurors and *went to bed*. With reference to that complaint this court said: "We find that this practice was error. It is the duty of the bailiff to look after the jury at all times and to remain with the jury and remain awake at all times while they are in his care. His failure to do so in this case constitutes such misconduct as to entitle the defendant to a new trial."

In *Allen v. State*, 215 Ga. 455 (1) (111 SE2d 70), the single complaint was the failure of the bailiffs to remain with the jury. There, the jurors were placed in at least six different rooms of a motel. One bailiff then *went to sleep* in a

room with a juror and the other in a separate room. Even though all of the jurors' affidavits recited no improper communication or conduct, this court, quoting approvingly from the *Blount* case, 214 Ga. 433 (4), supra, held that such lack of attendance by the bailiffs was reversible error.

In *Walker v. State,* 216 Ga. 15 (2) (114 SE2d 431), both separation of the jury and attendance by the bailiffs were involved. From two to four jurors were placed in rooms on two separate floors of a hotel. The bailiffs secured different rooms for themselves and *slept there* at night, they and the jurors assembling in the hotel lobby on the following mornings. The State's counter-showing was that half of the jurors were quartered on one floor, half on another and that nothing influenced them improperly, but the showing was silent as to whether the jurors were constantly attended by a bailiff or bailiffs while so quartered. Under those circumstances, this court cited the *Blount,* 214 Ga. 433 (4), and *Allen,* 215 Ga. 455 (1), cases, supra, and held that the jury "was not kept together and attended by a bailiff or bailiffs in the manner required by law. . ." It pointed out that the State's counter-showings in those two cases were very similar to the one under consideration in that case but that all three failed to satisfy the requirement that the "jury be kept together and that the bailiff placed in charge of the jury remain with them and stay awake at all times while he has charge of them."

In *Epps v. State,* 216 Ga. 606 (9) (118 SE2d 574), the complaint as to the jurors occupying separate rooms was not raised in the motion for new trial, and therefore was not considered. The only complaint was that the bailiffs did not remain with the jury at all times while it was in their care. There, the jurors occupied a motel, two in each of six rooms, and the bailiffs by working in shifts maintained a position outside the rooms and building in which the jurors slept. There was no showing that the bailiffs failed to stay awake and on duty throughout the night, or that they failed to perform any of their duties. The court cited *Code* § 59-717 and distinguished the *Blount,* 214 Ga. 433, *Allen,* 215 Ga. 455, and *Walker,* 216 Ga. 15, cases, supra, in that in those the bailiffs *went to sleep.*

Review of the foregoing cases shows the significance in the case at bar of two factors, quartering the jury on the same floor with the one common hallway and a bailiff remaining present and awake and performing his duties at all times. Thus, we hold that the two contentions made here are without merit.

■   Next, we consider the complaints relative to alleged improper communications with the jurors.

(1)   The first is that two of the jurors watched a television program from a set in their room. The court found, from these jurors' affidavits, that this program contained no reference whatever to the case on trial or to any other criminal case. This court held, in *Fogarty v. State,* 80 Ga. 450, 451 (11) (5 SE 782) that a juror's reading of a newspaper which stated merely that the particular case was on trial, a stronger situation from the defendant's point of view, was not reversible error. Likewise, there was no error here.

(2)   The second is that each of the jurors' rooms was equipped with a telephone, providing the opportunity for communications. But besides the affidavit of each juror that there were no telephone calls, the telephone switchboard operators covering the period of time during the jurors' occupancy swore that the telephone in each of the jurors' rooms was purposely made inoperative during such occupancy. The trial court found this to be true. This contention is not meritorious.

(3)   The third is that while the jurors were quartered in the hotel one became ill and a physician who had testified as a witness for the prosecution was summoned by a bailiff and remained in the presence of the ill juror and others for about twenty minutes. The trial court found that the bailiff who summoned the physician did not realize that he had been a witness but called that particular one because he was located so as to be able to respond quickly, and that the bailiff was present while the physician was in attendance. The court also found that the bailiff, the physician, the ill juror and the other jurors present engaged in no discussion whatever of the case on trial.

Applicable, not only to this complaint but also to the other contentions made in this ground, are principles set forth in *Richmond v. State,* 210 Ga. 403, 405 (80 SE2d 178): "It has

been held by this court that a mere trifling and immaterial irregularity in the conduct of a juror will not require the grant of a new trial [citations]. In this case, nothing more than an irregularity is shown. An irregularity without opportunity for injury will not require the grant of a new trial." Under the rule of such comparable cases as *Monroe v. State,* 5 Ga. 85, 86 (10), and *Daniel v. State,* 56 Ga. 653, the State, in the case at bar, carried the burden of showing that the defendant sustained no injury. As to emergency medical treatment of a juror, without discussion of the case on trial, see 53 Am. Jur. 639, Trial, § 884; 23A CJS 953, Criminal Law, § 1356b. The handling of this event was not cause for a new trial.

■ Special ground 2 complains that the trial judge expressed or intimated his opinion as to what had been proven by charging the jury as follows:

"Now gentlemen, I further charge you that if you find that the defendant was assailed by the deceased in an effort to prevent the burglary while the defendant was perpetrating a burglary of the residence and dwelling house of the deceased, such assault by the deceased upon the defendant would not avail the defendant the benefit of the law of self-defense about which I have heretofore charged you."

"If you find that the defendant committed a burglary by breaking and entering into the residence and dwelling house of the deceased, Jerry Cooper, with intent to commit a larceny or felony therein and that in the perpetration of this offense of burglary the defendant killed the deceased, as charged in the indictment, he would be guilty of the crime of murder."

The complaint is that this portion of the charge assumed, as a proven fact, a burglary of the victim's house, leaving only the question whether the defendant committed it, and since his defense depended upon the absence of any such burglary, the charge was particularly harmful and constituted reversible error.

The charge was not, in our opinion, subject to this criticism. It showed no such assumption, but correctly instructed the jury that, if the defendant was assailed by the deceased in an effort to prevent the defendant's perpetrating a burglary, such assault

would not avail the defendant the benefit of the law of self-defense. That charge was adjusted to the issues of the case. See *Daniel v. State,* 187 Ga. 411 (1), 412 (1 SE2d 6). It left the jury the issue of whether there was a burglary and, if so, whether this defendant committed it. Cf. *Barker v. State,* 169 Ga. 414 (4) (150 SE 642). Elsewhere the jury was instructed that the defendant contended that he was not guilty of any offense whatever, and the court charged his contentions fully and fairly.

■ Special ground 3, complaining of the failure of the court to charge, without request, upon the law of involuntary manslaughter, shows no error. From the evidence adduced, there was nothing to raise a doubt that the stabbing was not intentional. The defendant's unsworn statement to the jury as to what transpired did not require a charge on this subject. The rule long of force in this State is set forth in *Cofer v. State,* 213 Ga. 22 (2) (96 SE2d 601).

■ Special ground 5 complains that the court erred in denying defendant's motion to rule out and exclude from evidence the incriminating statements and alleged confessions of the defendant, the contention being that it affirmatively appears from the evidence that they were not freely and voluntarily given.

Actually there were only the written statement of July 20, 1960, and the oral statement of July 22, 1960. In the former the defendant admitted stabbing the deceased several times with a knife but sought to justify it upon the ground that after he went to the deceased's house for the purpose of playing cards with him, won his money and obtained his watch in pawn and was about to leave, he acted in self-defense when the deceased attacked him with a chair. In the later oral statement he admitted the stabbing but completely changed the preceding events, reciting that he broke into the house through a window, stabbed the deceased, and robbed him of his money and watch.

We have carefully examined all of the contentions made in this ground, together with the defendant's statement relating to them, and the evidence. We are satisfied that no error was committed.

The evidence with reference to the circumstances surrounding the two statements was provided by the Sheriff of Houston County and an agent of the Georgia Bureau of Investigation. The defendant offered no testimony on this phase but alluded to it in his unsworn statement, made after the testimony of those two officers. Significant events follow.

On Monday, July 18, 1960, the defendant was arrested by the agent and the Sheriff of Peach County near the City of Fort Valley. They then searched him, removing the deceased's watch and other articles from his person. Later that day, at the direction of the Sheriff of Houston County, the defendant was transferred by the Sheriff and the agent from the city hall of Perry to the jail of adjoining Pulaski County. On this day the defendant denied any connection whatever with the crime. He contended that he was not in Perry during a several-day period before and after the date of the homicide and disclaimed knowing anything about the watch or that it was on his person.

Then, on Tuesday, the 19th, the Sheriff of Houston County talked with the defendant in the Pulaski County jail at Hawkinsville. Again, the accused denied everything.

Next, on Wednesday, the 20th, in that jail the defendant gave a statement to the same sheriff and agent. The latter reduced it to writing, read it to the accused and afforded him the opportunity to read it. The defendant signed it in the presence of them and the Sheriff of Pulaski County. This was the written statement referred to above, in which Smith admitted stabbing Cooper but claimed it was done in self-defense following their card game. Immediately after that statement was made the two officers told the defendant that they had evidence that Cooper did not let him in his house but that he cut a window screen and broke in. The defendant denied that.

On the following day, Thursday the 21st, the Houston County sheriff was advised by the Pulaski County sheriff that the defendant wanted to see him, that he "wanted to tell us the truth about it."

In response to that message, on Friday the 22nd, he and the agent went to Hawkinsville and talked with Smith. He told

them that on Thursday he had asked the Pulaski County sheriff to call them. He then said that he hadn't told the truth about how he went in the house, stating that "I cut the screen." Then followed a narrative of his breaking in the house, killing Cooper and robbing him of his money and watch.

Upon the trial, these officers testified that the defendant's written statement of July 20 and his oral statement of July 22 were freely and voluntarily given, without any fear of punishment or hope of reward.

With that factual situation before him, the trial judge denied the motion to exclude those statements, thus allowing them for the jury's consideration. In this he was correct. "Before a confession can be admitted in evidence it must prima facie appear that it was made freely and voluntarily. If there is a dispute as to whether the confession was made freely and voluntarily, that question then becomes one of fact for determination by the jury. It is only where the undisputed facts show that the confession was not freely and voluntarily made that it should be excluded from the evidence." *Garrett v. State*, 203 Ga. 756 (1) (48 SE2d 377).

The defendant's position is that undisputed facts show his incriminating admission and confession were not freely and voluntarily made and that they should have been excluded from consideration. In an effort to support this, he makes several contentions.

The first is that he gained the impression from the questioning officers that he would not be allowed to return to Houston County nor see his family again until he told the officers what they wanted to know; also that the officers in effect suggested portions of the subsequent oral statement, as to how he gained entrance to the deceased's house, and that "he changed his earlier statement to coincide with this suggestion after repeated questioning at night and some five days," only because he had gleaned from them that this was the statement they wanted him to make and that if he did so, he would then be returned to Houston County and allowed to see his family again.

The officers denied making any such suggestions. On cross-examination the Houston County sheriff was asked, "Did you

tell this prisoner here on the 20th of July, that if he did not change his story that you would leave him in Hawkinsville and he wouldn't see his family again?" His answer was, "No sir, I did not."

Furthermore, nowhere in the evidence is there anything showing that this defendant was youthful, lacking in intelligence, ignorant, illiterate, or that the questioning was protracted or abusive, factors upon which many confession cases have turned. The record, including the defendant's oral statement to the jury, does not support his contention as to "repeated questioning at night and some five days." Certainly it cannot be said that the facts demanded a finding of duress or coercion so as to make the statements involuntary.

Next, the defendant contends that the circumstances and conditions show that the admission and confession were not voluntary. As to this he maintains that he was then being held incommunicado; that he was not given the benefit of counsel as required; that he was arrested illegally without a warrant; that an illegal search and seizure occurred when the watch was taken from him; that he was not afforded a committment hearing as required; and that he was confined in the Pulaski, rather than the Houston County, jail, in violation of law.

At the outset, in dealing with those contentions, we must point out that the record does not establish any incommunicado detention, there being contrary inferences; that no request was made for counsel by the defendant or anyone in his behalf; that his arrest was with probable cause, as he had the deceased's watch; and that the watch was, without objection, admitted in evidence. As to arrest without a warrant, failure to have a committment hearing, and confinement in another county, it is not necessary to deal with the sufficiency or insufficiency of the explanations which the officers made.

Even if proved, none of the factors enumerated above taken alone or with others present here, would demand a finding that the defendant's statements were not freely and voluntarily given. At most, those factors were circumstances to be considered by the jury under the court's charge on the question of whether the statements were voluntary. The authorities fully support this position.

In *Ferguson v. State*, 215 Ga. 117 (109 SE2d 44) (reversed by the Supreme Court of the United States upon another ground), this court held: "That the confession was made . . . before any warrant was issued or formal charge was made against the defendant, or the fact that the defendant was not thereafter carried before an officer authorized to receive an affidavit and issue a warrant within the time prescribed . . . would not render the confession inadmissible [citing Code § 38-411 and decisions of this court]. The fact that a defendant might be illegally detained at the time of making a statement does not render it inadmissible in a State court [citing Stein v. New York, 346 U. S. 156, 73 SC 1077, 97 LE 1522]."

In 23 CJS 179, 180, Criminal Law, § 817 (5), it is said: "Also the fact that accused was taken for questioning and placed in jail in a county other than the one having jurisdiction of the offense charged . . . or that the friends and family of accused were denied any opportunity to see accused while he was in custody until after the confession was made, does not render his confession inadmissible . . . the absence of, or refusal to permit visitation by accused's friends, relatives or legal counsel is a circumstance to be considered on the question of whether a confession is voluntary, and taken in connection with other circumstances may render the confession involuntary and inadmissible." Also, 23 CJS 180-182, Criminal Law, § 817 (6), states: "Unless the facts show that an unlawful arrest or confinement, in itself, constitutes such duress as to make a confession made by accused while under arrest or confinement involuntary, the same rules as to admissibility of the confession are applicable as if the arrest were lawful . . . a confession is not rendered inadmissible by the fact that accused was in custody or confinement without formal arraignment, commitment, or filing of charges against him. . . However, the illegality of arrest, confinement, or custody is a circumstance to be considered in determining whether a confession has been unlawfully coerced. . ."

See, in this same connection, 20 Am. Jur. 431, 432, Evidence, §§ 498, 499.

It was subsequently to the ruling admitting the admission

and confession that the defendant made his unsworn statement. In it he emphatically adhered to his written statement and sought to attribute his subsequent oral statement, the full confession, to suggestion by the officers, illness and his desire to satisfy the officers so they would return him to Perry where he could see his family.

In its instructions to the jury the court charged fully and fairly on the subject of this admission and confession, using the exact language requested by the defendant's counsel.

There is no merit in this ground.

The trial court properly denied the motion for new trial.

*Judgment affirmed. All the Justices concur, except Quillian, J., who dissents from Division 5 of the Opinion and the corresponding headnote.*

QUILLIAN, Justice, dissenting. The defendant, arrested without a warrant, was not, as the law requires, carried by the officer before a magistrate (*Code Ann.* § 27-212, as amended by Ga. L. 1956, pp. 796, 797), and although nothing in the record indicates the jail in the county where the crime was committed was unsafe or that there was danger of mob violence, the defendant was, contrary to law, carried to another county and there lodged in jail. He was there kept isolated from his friends and acquaintances until, after several days, he made the confession suggested by one of the officers.

In this factual posture, it is my opinion the confession was extracted from the defendant through illegal and oppressive measures amounting to coercion. The confession was thus divested of the quality of being freely and voluntarily given. It is my further opinion that, while the search of the defendant's person was legal when made, when the accused was not carried before a magistrate the arrest became illegal and the search made incident to the arrest likewise became illegal. For the reasons given, I am compelled to dissent from the views expressed in the majority opinion and the judgment.