**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

July 18, 2024

# In the Court of Appeals of Georgia

A24A1029. BROWN v. THE STATE.

MERCIER, Chief Judge.

Following a jury trial, Rodney Earl Brown was convicted of aggravated child molestation, incest, four counts of child molestation, and two counts of electronically furnishing obscene material to a minor. He appeals the denial of his motion for new trial, arguing that the trial court erred in replacing a "hold out" juror during jury deliberations and then failed to properly instruct the jury after the juror was replaced. For reasons that follow, we reverse.

The record shows that after deliberating for over four hours, the jury informed the trial court that it was in agreement as to one count, but deadlocked 11-1 on all other counts and that "[a]dditional time for deliberation [would] not move the hold out."

The trial court asked the jury to continue deliberating and also inquired whether all members were participating in the process. The jury responded that all members were participating. Sometime later, the jury sent a note to the trial court indicating that they were "hopelessly deadlocked after additional deliberation." A separate note, sent at essentially the same time but on different paper and in what appears to be different handwriting, provided the following information: "We have a juror that cannot put his personal job title aside because he is an anal[y]st. This is why we are hung."

Discussing the issue with the trial court, the attorneys recalled that during voir dire a potential juror had disclosed his work as a forensic analyst and expressed concern about serving on the jury. Ultimately, however, the analyst indicated that he could "put [his] occupation to the side" and decide the case based upon the evidence presented. Neither the prosecution nor the defense struck him, and he was placed on the jury. The prosecutor further recalled that immediately after jury selection, the trial court gave jurors several preliminary instructions, including not to discuss the case on social media, then released them for lunch. Following the lunch recess, the analyst informed the trial court that before being placed on the jury, he had commented on Twitter about his potential jury service, posting that given his forensics background,

he was "walking grounds for a mistrial." The analyst described the tweet for the court, stating that he did not expect to be selected for the jury. The trial court assured the analyst that everyone was aware of his background, and neither party questioned him or asked that he be removed from the panel. Immediately thereafter, the jury was sworn, the trial court provided jurors with additional instructions, and trial commenced.

When issues regarding the analyst arose during jury deliberations, the trial court indicated that it would entertain argument as to whether the analyst should be removed from the jury, then stated its intention to give the jury an *Allen* charge.[1] The

---

[1]     An *Allen* charge typically informs the jury that a unanimous verdict is required, and instructs the jury, among other things, that while this verdict must be the conclusion of each juror and not a mere acquiescence of the jurors in order to reach an agreement, it is nevertheless necessary for all of the jurors to examine the issues and questions submitted to them with candor and fairness and with a proper regard for and deference to the opinion of each other.

*Moon v. State*, 312 Ga. 31, 38 n.5 (2) (a) (860 SE2d 519) (2021) (citation and punctuation omitted); see also *Allen v. United States*, 164 U. S. 492, 501 (9) (17 SCt 154, 41 LE 528) (1896).

trial court administered the charge and instructed jurors to continue deliberating. At the State's request, however, the judge halted deliberations to question the jury foreman about the situation involving the analyst.

When the foreman entered the courtroom, the trial court discovered that he was, in fact, the analyst. The trial court asked him about a tweet he posted at 7:50 a.m. the prior morning (before trial resumed at approximately 9:00 a.m.), which stated: "Extraordinary claims demand extraordinary evidence." The analyst explained that he had posted the tweet in his professional capacity regarding claims at an ongoing conference relating to "industrial control systems[.]" Referencing the jury note it had received regarding the analyst, the trial court then inquired whether he could "listen to the evidence, weigh the evidence that was presented to [him], the law and charge, assess witness credibility and render a decision." The analyst responded: "Yes, Your Honor." The attorneys indicated that they had no questions for the analyst, and he returned to the jury room.

The jury later sent another note, stating: "[A]fter additional deliberation the jury is unable to reach a verdict on the remaining 8 counts. The vote remains 11-1 with

4

no change in the hold out." At that point, the trial court decided to interview the juror who had sent the note regarding issues with the analyst. That juror reported:

> [The analyst] keeps recalling, in my personal experience at my job I do this, this is not adequate — like, just keep[s] saying, my job, when I used to do that, it's not adding up, basically, that's what he's saying, my job, my personal experience, when I did this — I've been on cases — he just keeps bringing up what he used to do, he's not focused on just what we have. He's focused on, okay, let me go back to what I used to do. And we were asked to put our jobs aside, what we do aside, just focus on the case and he cannot do that.

The trial court inquired whether the analyst was participating in the decision-making process. The juror responded: "He is participating. He's also informing [us] that he cannot set aside what he has been taught over the years with this job." The juror asserted that the analyst had interfered with deliberations, but, when asked about the interference, the juror noted only that the analyst had stated that he could not set aside his professional opinion and what he knew was the "right way of doing things."

Following this inquiry, the trial court asked for a full record of the analyst's tweets regarding the trial. The State offered evidence that during jury selection on the

morning of April 19, 2022, before he was chosen as a juror and instructed not to post about the trial on social media, the analyst tweeted the following:

> I've personally been the victim of a violent crime[.] I could go on, but any one of those is enough that they won't seat you for a criminal case. #1 is disqualifying for most civil cases. I won't let anyone misrepresent digital evidence, I'm a [sic] walking grounds for a mistrial.
>
> I would never say I'd be involved in jury nullification. But I also don't think prison is appropriate for most nonviolent offenses and would likely vote my conscience.
>
> It's a child molestation case that also involves digital evidence. During the initial panel "what do you do" questions, I said I do digital forensics and have done expert witness testimony. In the ready room now just waiting for that first round of strikes . . . Playing the "report for jury duty even though nobody will EVER seat you on a jury" game this morning.

Later that afternoon, after he told the trial court about his professional history and the "walking mistrial" tweet, the analyst tweeted: "I'm not trying to get out of anything. I just didn't want to waste the state's time with a mistrial." In a follow-up tweet the next evening, the analyst posted: "I wanted them to know that if there was an issue with that tweet (or my position), either dismiss me now or seat a new jury. But didn't want it coming up at the end of or after the trial." The final tweet on record

6

is the "[e]xtraordinary claims demand extraordinary evidence" statement posted early in the morning on April 21, 2022.

Concerned about the analyst's comments regarding "jury nullification" and "extraordinary evidence," and finding that he had posted on social media after being instructed not to do so, the trial court removed the analyst from the jury and replaced him with an alternate juror. The trial court explained: "I feel that based on the totality of all of the Tweets, in combination with what the Court has been informed, there has been frustration of jury deliberations in this case." The defense moved for a mistrial on all charges and raised questions about replacing a juror during deliberations. The trial court, however, denied the motion. Later that evening, the jury returned its verdict, finding Brown guilty of all but one of the multiple offenses with which he was charged.[2] Brown filed a motion for new trial, arguing that the trial court erred in dismissing a juror after deliberations began. The trial court denied the motion, and this appeal followed.

1. A trial court typically has "broad discretion to replace a juror with an alternate at any point during the proceedings where, among other reasons, it is shown

---

[2] The jury found Brown not guilty of one count of child molestation.

that the juror is unable to perform his or her duty or legal cause exists." *Morrell v. State*, 313 Ga. 247, 263 (3) (869 SE2d 447) (2022); see also OCGA § 15-12-172. This discretion, however, narrows "once deliberations have begun, and even more so when removing a dissenting juror from a jury that appears to be divided." *Jones v. State*, 314 Ga. 214, 222 (2) (b) (875 SE2d 737) (2022). "[B]ecause removing a dissenting juror when the jury is deadlocked risks violating a defendant's right to a unanimous verdict, a trial judge must exercise the utmost care in determining that good cause exists before removing the juror." Id. at 223 (2) (b) (citation and punctuation omitted). A hold out juror may be removed if "sufficient investigation supports findings establishing proper reasons unrelated to the juror's view of the trial evidence[.]" Id. But a trial court may not replace a juror "for reasons related to the juror's view of the trial evidence, even if the juror's insistence on that view has negative effects on other jurors and the jury's deliberations." Id. As explained by our Supreme Court, "alternate jurors generally should not serve to substitute for minority jurors who cannot agree with the majority, as taking such a minority position does not by itself render a juror incapacitated or legally unfit to serve[.]" *Moon v. State*, 312 Ga. 31, 45 (2) (b) (860 SE2d 519) (2021) (citation and punctuation omitted).

In denying Brown's motion for new trial, the trial court concluded that the analyst failed to "put his occupation aside" when deliberating with fellow jurors, despite representing during voir dire that he could set aside his occupation and decide the case based on the evidence. In the court's view, this failure demonstrated that the analyst was "untruthful during voir dire." When questioned about the deadlock, however, the analyst assured the trial court that he could make a decision based on the evidence, and the other juror interviewed by the court conceded that the analyst was participating in the deliberations. Although that juror was concerned by the analyst's focus on his professional work experience, "jurors properly bring to deliberations knowledge that they obtained prior to the trial that facilitates the jury's assessment of the evidence presented at trial." *Martin v. State*, 298 Ga. 259, 293 (16) (779 SE2d 342) (2015) (emphasis omitted), disapproved of in part on other grounds by *Willis v. State*, 304 Ga. 686, 706 n.3 (11) (a) (820 SE2d 640) (2018). In fact, "most jurors in most cases bring some previous knowledge to jury deliberations that helps the other jurors understand and evaluate the evidence and arguments presented by the parties at trial, and we find this to be part of the very nature of the constitutionally mandated trial by jury." Id. (emphasis omitted).

The trial court's investigation did not reveal any failure by the analyst to deliberate or consider the evidence presented at trial. Nothing indicates that he refused to listen to the evidence, weigh the evidence in accordance with the law, or assess witness credibility when making his decision. Rather, as the analyst told other jurors, he simply found that the case was "not adding up[.]" The analyst did not hide his background. His prior experience with forensics was well known to the parties, and both sides accepted him as a juror. The fact that his specialized knowledge informed his interpretation of the evidence is not a proper ground for complaint or removal. See *Martin*, 298 Ga. at 294 (16) ("Having accepted Juror Lemmond as a juror, Martin cannot now complain that her knowledge drawn from her past employment assisted the other jurors in considering the evidence and arguments made by the parties at trial.").

The trial court further found that the analyst was properly removed because he violated the court's instructions by posting various tweets about the trial. But several of these tweets — including the "jury nullification" reference that the trial court deemed concerning — were posted before the jury was selected and *prior to* the admonition regarding social media use. And after receiving the social media

instruction, the analyst informed the trial court that he had posted about his potential jury service on Twitter. Neither the parties nor the trial court explored the analyst's posts or questioned him about them. These pre-admonition tweets did not violate the trial court's instructions.

The remaining three tweets were posted after the social media admonition. In two of the tweets, the analyst generally referenced his discussion with the trial court immediately after jury selection, noting in the posts that he was not "trying to get out of anything," that he did not want to cause a mistrial, and that he wanted the court to be aware of his previous "walking mistrial" post and his "position." These posts violated the trial court's instruction not to discuss the case on social media. Neither tweet, however, offered details about the trial or the facts of the case, and we cannot find such violation sufficient legal cause for removing the single dissenting voice from a deadlocked jury. See *Smith v. State*, 218 Ga. 216, 222 (2) (c) (1) (126 SE2d 789) (1962) ("[J]uror's reading of a newspaper which stated merely that the particular case was on trial . . . was not reversible error."); *Fulcher v. State*, 259 Ga. App. 648, 651 (4) (578 SE2d 264) (2003) ("Simply glancing at a relevant [newspaper] article in violation of the court's instructions is not enough" to require removal of a juror). Compare

*McGuire v. State*, 200 Ga. App. 509, 510 (3) (408 SE2d 506) (1991) ("The trial judge did not abuse his discretion in concluding that the failure of the juror in question to adhere to his instructions . . . , combined with the juror's subsequent conduct in attempting to influence the other jurors to do likewise, constituted 'legal cause' for his removal.").

Similarly, the third and final post-admonition tweet does not authorize the analyst's dismissal. This tweet — that "[e]xtraordinary claims demand extraordinary evidence" — made no reference to the trial or jury service. The prosecutor admitted that she had "no idea" what the tweet involved and that the tweet "could be about something else." And when the trial court questioned the analyst about the tweet, he explained that it related to a work issue, not the trial. The trial court evidently dismissed this explanation, concluding that the tweet, which on its face had no connection to the trial, "concerned the trial of this case." Nothing in the record, however, supports that conclusion. See *Jones*, 314 Ga. at 222 (2) (b) ("[T]here must be some sound basis upon which the trial court exercises his discretion to remove the juror.") (citation and punctuation omitted); *Nelson v. State*, 370 Ga. App. 231, 234 (2) (896 SE2d 139) (2023) (removal of juror improper where "expressed reasons for

12

removing [juror] are . . . not supported by the facts developed in the trial court's inquiry"); *Semega v. State*, 302 Ga. App. 879, 881 (1) (691 SE2d 923) (2010) ("Dismissal of a juror for want of any factual support, or for a legally irrelevant reason is prejudicial.") (citation and punctuation omitted).

"To remove a juror because he is unpersuaded by the Government's case is to deny the defendant his right to a unanimous verdict." *Moon*, 312 Ga. at 37 (2) (citation and punctuation omitted). The evidence shows that the analyst engaged in deliberations, but found that the State's case was "inadequate" and did not "add[] up." The forensic knowledge that he discussed in the jury room presented no basis for his removal. And although the other juror asserted that the analyst had interfered in deliberations, the trial court's inquiry regarding that claim produced no explanation as to how — other than by bringing his education and life experience to the table — the analyst had impeded the jury's work. Finally, to the extent the analyst's social media posts violated the trial court's instruction, the violation was a minor infraction that did not impact the trial and was not an issue until the analyst's status as the lone hold out became known.

"[F]rom the information in the record, the trial court did not have grounds to conclude with confidence that the reason for removal was unrelated to the [analyst's] view of the evidence." *Nelson*, 370 Ga. App. at 235 (2) (896 SE2d 139) (2023) (citation and punctuation omitted). The trial court, therefore, abused its discretion in dismissing the analyst during deliberations and replacing him with an alternate juror. See *Moon*, 312 Ga. at 50 (2) ("Because the judge's limited inquiry into Juror No. 7's alleged incapacity and misconduct fell short of providing a sound basis for the juror's removal, we conclude that the judge abused her discretion in removing Juror No. 7."); *Semega*, 302 Ga. App. at 882 (1) (trial court abused its discretion in removing lone hold out juror where evidence did not demonstrate that juror was incapacitated or otherwise legally unfit to remain on the jury). Accordingly, we reverse Brown's convictions and remand the case for a new trial on those charges.[3] See id..

2. We need not address Brown's remaining enumeration of error, which is now moot.

*Judgment reversed and case remanded. McFadden, P. J., and Rickman, J., concur.*

---

[3] Brown does not challenge the sufficiency of the evidence supporting his convictions or claim that the State cannot retry try him on those charges. Instead, he argues on appeal that the trial court's error entitles him to a new trial.