## 39488. HAMPTON v. THE STATE.

WELTNER, Justice.

George Thomas Hampton was convicted in Murray County for the murder of James Ledford, age 78, and was sentenced to life imprisonment. The victim died from a severe blow to his chest. The state did not seek the death penalty.

1. The first enumeration of error is the denial of a motion for continuance. Defense counsel was appointed on November 9, 1981. The statements of Hampton's co-defendants were filed, respectively, on February 9th and 16th, 1982, and notice of agreement between the state and the co-defendants to accept pleas to the lesser offense of robbery in return for their true testimony was filed on Friday, February 19, 1982. The motion for continuance was filed on Monday, February 22, 1982, the day upon which trial was to have commenced, and was predicated upon the contention that the plea agreements were "unexpected developments" which "drastically [altered] the needs of the defense" requiring "a substantial continuance" in order "to properly prepare an adequate defense."

Hampton's attorney was aware before the filing of the co-defendants' statements of the positions each of them had adopted regarding the robbery and death of James Ledford. Because no indication was given to the trial court of the "specific actions that remained to be taken" to prepare Hampton's defense (*Chenault v. State,* 234 Ga. 216, 222 (4) (215 SE2d 223) (1975)), we are unable to conclude that the trial judge abused his discretion by denying the motion for continuance. *Foster v. State,* 213 Ga. 601, 602 (1) (100 SE2d 426) (1957). The record demonstrates counsel's adequate preparation of Hampton's defense. The first enumeration of error is

without merit.

2. Hampton next contends that testimony concerning foot-prints across a nearby plowed field, and in and near the victim's home, and a pair of tennis shoes taken from him, should have been excluded from evidence upon his objection because neither of the witnesses who testified regarding the footprints was qualified as an expert, no photographs or plaster casts of the footprints were offered in evidence, no testimony regarding measurements of the footprints and shoes was admitted in evidence, and the witnesses did no more than offer their opinions regarding the "similarity" of the footprints and the shoe soles. Hampton also enumerates as error the opening and closing remarks of the district attorney regarding the footprint and shoe evidence.

Opinion testimony about the relationship between the foot-prints and the shoes was properly admitted, as the treads of the shoes were visible to the jurors, and testimony was adduced as to the "zigzag-type tread ... a narrow close tread" that had made the prints. OCGA § 24-9-65 (Code Ann. § 38-1708); *Spencer v. State,* 236 Ga. 697, 700 (4) (C) (224 SE2d 910) (1976). The second enumeration of error lacks merit.

3. The third enumeration of error presents the question of whether the trial court abused his discretion by limiting the cross-examination of Ricky Silvers and Glenn Duckett to facts establishing previous criminal convictions of Silvers, to the fact of Duckett's testimony in behalf of Silvers during those trials and to the fact of the family relationship between Silvers and Duckett. The examination excluded was not intended to establish prior inconsistent statements. Rather, the stated purpose was to show a "pattern of conduct," that is, that Duckett had helped Silvers because of their family relationship. Under these limited cir-cumstances — the relationship of the witnesses and the previous cooperation between them having been established by cross-examination — we find no abuse of discretion in excluding spe-cifics of the previous testimony. *Mitchell v. State,* 236 Ga. 251, 256 (3) (223 SE2d 650) (1976). Cf., *Hines v. State,* 249 Ga. 257, 259 (2) (290 SE2d 911) (1982).

4. Hampton contends that his motion for mistrial should have been granted because the state cross-examined him concerning statements allegedly made by him to a certain Bates — all of which he denied under oath — and, although the state failed to call Bates as a witness, commented upon these matters during closing argument.

The failure of the state to prove the conversation between Hampton and Bates cut in favor of Hampton, not against him. Further, had the state succeeded in proving that Hampton made

such comments to Bates, the testimony merely would have been cumulative of other testimony by Rocky Silvers (a relative of Ricky Silvers) and of the testimony of Ricky Silvers and Glenn Duckett, as to Hampton's participation in the robbery and homicide. The prosecutor's allusion in closing argument to "the statements that were made to Willard Bates" was improper, in light of the total failure of the state to prove that Hampton had made any statement to Bates. "However, at that point the jury has heard the evidence and hopefully can recognize a misstatement when one is made." *Barnes v. State,* 244 Ga. 302, 308 (260 SE2d 40) (1979). The state succeeded in showing that Hampton had made similar statements to Rocky Silvers — not to Bates — and the trial court did not err in denying the motion for mistrial. *Barnes v. State,* supra. The fourth enumeration of error is without merit.

5. The trial court did not err by denying Hampton's motion for a directed verdict of acquittal. The jury was authorized by the evidence to find the following as facts beyond a reasonable doubt: Hampton, Rocky Silvers, Ricky Silvers, and Glenn Duckett drove to the home of Paul McCurdy in Crandall, Georgia. They drank beer and smoked marijuana at McCurdy's home, from which they could see the residence of James Ledford, the victim.

Hampton and Ricky Silvers left the group long enough to speak together alone. When they returned, the group, except for McCurdy, left for Tennessee to sell three firearms, driving by Ledford's home on the way in order to survey the premises.

After they were unable to sell the firearms, Hampton told the group that he knew Ledford kept money in his home and that they probably could rob him.

Ricky Silvers drove the group to a trailer where they obtained pieces of cloth to use as stocking masks. They parked near Ledford's house, and observed him leave and return to his house. Ricky Silvers and Duckett entered the house with Hampton after Hampton told them, "I believe I could do it."

Ledford pleaded with the group not to hurt him, promising them he would give them his money, but Hampton struck Ledford in the chest, then tied his hands and one leg behind his back. The group took his money bags, billfold and change, tossed his weapons outside, then made their escape on foot across a newly-plowed field to meet Rocky Silvers with an automobile.

The group then drank more beer, at which time Rocky Silvers heard them relate they had tied up Ledford and had taken his money. Hampton distributed some of the money to the various accomplices, and was heard to state, "Well, I'm kindly glad he died . . . you know, a dead man can't talk anyway."

Police investigators found the victim and medical testimony indicated the cause of death as being a blow to Ledford's chest of sufficient force to break his sternum. The victim had suffered from cardiac disease and kidney disease prior to the assault, but the medical evidence did not indicate that either heart attack or stroke was the cause of death. Rather, the cause of death was the severe blow to a diseased heart.

Testimony of Hampton's relatives indicated that Hampton had been out of work and had money problems.

Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 5, 1983.

*Eugene S. Taylor,* for appellant.
*Stephen A. Williams, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Assistant Attorney General,* for appellee.