## 67752. WRIGHT v. THE STATE.

DEEN, Presiding Judge.

The appellant, Otha Wright, was convicted of burglary, rape, and aggravated sodomy. This appeal followed.

At approximately 4:00 a.m. on January 24, 1983, Ophelia Marks awoke to find a man in her bed. This assailant, armed with a knife, then raped her. The victim's daughter, evidently awakened by the

disturbance, appeared in her mother's doorway, whereupon the victim, at the assailant's instruction, informed her that she was all right. The daughter returned to her bedroom, and the assailant departed shortly afterwards; moments later, however, a second man entered the victim's bedroom, pushed her to the bed, and performed an act of oral sex. The victim's daughter reappeared, and the victim pleaded with the second intruder to allow her to go to her children's room to check on them, promising to submit thereafter to whatever he desired of her, and the assailant assented. When she went to her children's room, she locked the door and escaped out the window.

The victim then ran across the street to her sister's apartment, screaming for help, and from there the police were summoned. Willie Mae Rucker, the sister's next-door neighbor who happened to be up attending to a baby, heard the screaming, looked out her window, and saw the victim running across the street. Seconds later she also saw the appellant, whom she recognized because he lived in the same neighborhood, leave the victim's house. She subsequently informed the investigating officers of this identification. The victim later selected the appellant's photograph and that of a man named Otis French from a police book of mug shots.

Lieutenant Stripling and Captain McKinnon picked up the appellant for questioning on January 24, 1983. After being informed of his rights and signing a waiver of counsel, the appellant denied any knowledge of the incident and claimed that he had been at home at the time. He was then released. On January 28, 1983, the officers left word at the appellant's residence, requesting the appellant to come down to the police station for further questioning. The officers again informed the appellant of his rights, after which the appellant signed another waiver of counsel and agreed to have the ensuing interview tape recorded. During the interview, the appellant confessed to having entered the victim's residence, along with Otis French and Mike Thompson. Thompson had raped the victim, and then the appellant had performed the act of oral sex. After the victim had escaped, all three men departed by the apartment's side door.

At trial, the appellant recanted the custodial statement, asserting that the statement was the product of police coercion. He asserted an alibi defense, claiming that he was at home during the commission of the crimes. The appellant's mother, sister, and brother corroborated the appellant's testimony that he had watched television until 2:00 a.m., after which he had gone to bed.

On appeal, Wright contends that the trial court erred in admitting into evidence the appellant's custodial statement; that the trial court erred in various instructions to the jury; and that the

evidence was insufficient to support the conviction. *Held:*

1. During the Jackson-Denno hearing conducted at the trial, the appellant claimed that his custodial statement had been impermissibly induced by one officer's threat to have him sentenced to life and by the officer's informing him that Otis French had already confessed, implicating the appellant; both officers denied these allegations, explaining that they had told the appellant that they did not believe his claim of ignorance concerning the matter and that they did have a witness. The officers had carefully gone over the appellant's rights one at a time, and the appellant had indicated that he understood. From this evidence, the trial court concluded that the appellant's confession on January 28, 1983, was freely and voluntarily given. Such determinations of fact and credibility relating to the admissibility of a confession will be upheld on appeal unless clearly erroneous. *Strickland v. State,* 250 Ga. 624, 625 (300 SE2d 156) (1983); *Crawford v. State,* 245 Ga. 89, 90 (263 SE2d 131) (1980); *Cook v. State,* 165 Ga. App. 234, 235 (299 SE2d 157) (1983). The trial court's findings in this case certainly were not clearly erroneous.

The appellant also contends that his statement should have been excluded because the interview conducted on January 28, 1983, was improper interrogation after he had earlier indicated that he did not want to discuss the matter further on January 24, 1983. Initially, we note that the only semblance of evidence that the appellant had asserted his right to silence is the cross-examination testimony of Officer McKinnon: "[Counsel for appellant]: He just basically told you that he didn't know anything about the case and he didn't have anything to say about it, is what he said? [McKinnon]: That's it. [Counsel]: He said he didn't want to talk about it any more? [McKinnon]: Right." Prior to that, both McKinnon and Stripling testified that on January 24, 1983, the appellant had merely stated that he knew nothing of the incident, and that the appellant had never invoked his right to silence; the appellant himself testified to that effect.

Assuming, *arguendo,* that the appellant had asserted his right to silence, that alone would not have absolutely barred subsequent questioning. The Supreme Court, in rejecting such an absolute bar, observed that "a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests." Michigan v. Mosley, 423 U. S. 96, 102 (96 SC 321, 46 LE2d 313) (1975);

*Bright v. State,* 251 Ga. 440, 445 (306 SE2d 293) (1983). In such a case, the test for admissibility of a statement is whether the asserted right to terminate the questioning was scrupulously honored. *Ibid.*

This case does not involve a subsequent interrogation of a suspect while he remained in custody. The January 24, 1983, interview with the appellant was brief, and the appellant was released. On January 28, 1983, the appellant returned to the police station on his own, after being requested to do so by the investigating officers. Those officers, as noted above, then once again carefully reviewed the appellant's rights, after which the appellant signed the second waiver of counsel and confessed to his participation in the incident. Under these circumstances, we conclude that the investigating officers did scrupulously honor the appellant's right to silence, if in fact that right was asserted.

2. The appellant's contentions that the trial court erred in its instructions to the jury on the law of impeachment, alibi, and circumstantial evidence are without merit. The trial court gave a standard jury charge on the jury's duty to resolve conflicting evidence and to make credibility determinations. The appellant contends that the trial court should also have instructed the jury that a witness may be impeached by disproving the facts testified to by him. "It may be, as suggested in *Southern Ry. Co. v. O'Bryan,* 119 Ga. 147, 150 (45 SE 1000), that ... [such a charge] ... would not be inappropriate in any case where there is a conflict in the evidence." *Aiken v. Glass,* 95 Ga. App. 849, 856 (99 SE2d 426) (1957). But there certainly is no requirement that the charge be given in every case simply because there is a conflict of evidence.

The trial court's instruction on resolution of conflicting testimony and credibility adequately provided the jury with proper guidelines for determining guilt or innocence. The bottom line in this case was that the jury was compelled, if it could not resolve the conflicts, either to accept the state's evidence of the appellant's participation in the criminal activity and to reject the evidence of alibi, or vice versa, and the charge as given so informed the jury.

We also reject the appellant's contention that alibi is an affirmative defense and that the trial court erred in not specifically instructing the jury that the state had the burden of disproving the alibi defense beyond a reasonable doubt. The trial court did correctly charge the jury on alibi and on the state's burden of proving beyond a reasonable doubt that the appellant committed the offenses charged. Where the trial court thus adequately charges the jury of the state's general burden of proof, it is not necessary also to instruct specifically that the state must disprove an alibi defense beyond a reasonable doubt. See footnote 2, *Patterson v. State,* 233 Ga. 724 (213 SE2d 612)

(1975).

Although alibi has often been treated as an affirmative defense, it "is not truly an independent affirmative defense. It is simply evidence in support of a defendant's plea of not guilty, and should be treated merely as 'evidence tending to disprove one of the essential factors in the case of the prosecution, that is, presence of the defendant at the time and place of the alleged crime.' " *Parham v. State,* 120 Ga. App. 723, 727 (171 SE2d 911) (1969); accord, *Rivers v. State,* 250 Ga. 288 (298 SE2d 10) (1982). In holding that it ordinarily is not error to fail to charge specifically on alibi absent a request, the Supreme Court observed that "[b]oth the courts and commentators have long noted that since the true effect of an alibi defense is to traverse the state's proof that the defendant committed the crime, the charge that the burden is on the state to prove that the defendant committed the crime beyond a reasonable doubt itself necessarily covers the question of whether the evidence of alibi was sufficient to create a reasonable doubt. [Cits.]" *Rivers v. State,* supra at 300. In short, the requested charge misstated the law, and the trial court did not err in omitting it.

The appellant's contention that the trial court should have instructed the jury that the appellant's custodial statement was only circumstantial evidence of guilt incorrectly categorizes that statement. "An incriminating statement is one freely and voluntarily made by the accused, which only tends to establish his guilt of the offense charged, or one from which, together with other proven facts and circumstances, guilt may be inferred by the jury . . . An incriminating statement is indirect or circumstantial evidence." *Pressley v. State,* 201 Ga. 267, 270-271 (39 SE2d 478) (1946). But where the defendant admits the offense of which he is accused and states no facts or circumstances of excuse or justification, the statement constitutes a confession of guilt. *Kennedy v. State,* 156 Ga. App. 792, 793 (275 SE2d 339) (1980); accord, *Harris v. State,* 207 Ga. 287 (61 SE2d 135) (1950). The appellant's statement in this case was a confession and not merely an incriminating statement, and as such it was direct evidence of guilt. *Wilson v. State,* 57 Ga. App. 839 (197 SE2d 48) (1938).

3. The appellant also asserts the general grounds. Viewing the evidence in the light most favorable to the prosecution, however, we conclude that a rational trier of fact could have found the appellant guilty of the offenses charged beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Hampton v. State,* 250 Ga. 805 (301 SE2d 274) (1983).

*Judgment affirmed. McMurray, C. J., and Sognier, J., concur.*

DECIDED FEBRUARY 1, 1984.

*Robert M. Bearden, Jr.,* for appellant.
*Willis B. Sparks III, District Attorney, Thomas J. Matthews, Assistant District Attorney,* for appellee.