## 69336. SMITH v. THE STATE.
### (328 SE2d 553)

CARLEY, Judge.

Appellant was tried before a jury and convicted of burglary. His motion for new trial was denied and he appeals.

During a lunch recess on the day of appellant's trial, a juror and a witness for the State left the courthouse together and drove to a nearby restaurant. Appellant, upon learning of this event, moved for a

mistrial. Both the juror and the witness were questioned about the incident. It was established that they were "good friends." Both denied having discussed the case at all during their lunch together. The juror stated that his social contact with the witness would have no effect on his status as an impartial juror. The motion for mistrial was denied, which ruling appellant enumerates as error.

The State relies upon *Hardy v. State*, 242 Ga. 702, 704 (3) (251 SE2d 289) (1978) as authorizing the trial court's denial of appellant's motion for mistrial. However, appellant contends that *Hardy* is distinguishable because, in the instant case, neither the witness nor the juror were administered an oath prior to being questioned. Appellant contends that, absent an oath, there was no "*testimonial evidence . . .* to meet the burden cast upon the [S]tate, in such circumstances, to rebut by proof a presumption of harm. [Cits.]" (Emphasis supplied.) *Hardy v. State*, supra at 704.

*Hardy* is not distinguishable and its holding is applicable to the instant case. The witness had already been sworn, and had given his trial testimony prior to being questioned in connection with appellant's motion for mistrial. Thus, the most that can be said is that the witness was not specifically reminded that he was *still* under oath when questioned at that later time. Cf. *Smith v. State*, 81 Ga. 479, 481 (2) (8 SE 187) (1888). The juror, on the other hand, was never specifically sworn as a witness. But see OCGA § 15-12-132. However, appellant in the trial court did not object to the failure to administer an oath to the juror and thus, he cannot raise this issue on appeal. See *Rhodes v. State*, 122 Ga. 568 (1) (50 SE 361) (1905).

Accordingly, under the circumstances, *Hardy* constitutes controlling authority for affirming the denial of appellant's motion for mistrial.

*Judgment affirmed. Banke, C. J., Deen, P. J., McMurray, P. J., Birdsong, P. J., Sognier, Pope and Benham, JJ., concur. Beasley, J., dissents.*

DECIDED FEBRUARY 25, 1985 —
REHEARING DENIED MARCH 15, 1985 — ▮▮▮▮▮▮▮▮

*R. David Carr IV*, for appellant.
*E. Byron Smith, District Attorney, Hugh D. Sosebee, Jr., Assistant District Attorney*, for appellee.

BEASLEY, Judge, dissenting.
The law imposes a presumption of prejudice on the State when there is irregularity in juror conduct. *Martin v. State*, 242 Ga. 699 (251 SE2d 240) (1978); *Hardy v. State*, 242 Ga. 702, 704 (251 SE2d 289) (1978). Under the circumstances here, I do not believe it is dis-

pelled by the mere statements, sworn or unsworn, that the witness and the juror did not talk about the case.

At lunchtime, the judge instructed the jurors "But let me just caution you, again, while you are away from the courtroom and the jury room, not to have any contact at all with any of the parties or the witnesses for either side of this case and not to discuss this case with anyone, including among yourselves, . . ."

Prior to this time, a criminal investigator with the police department had testified that he was called to the scene of the burglary, took a list of items, could not get fingerprints, checked the neighborhood, and conducted a routine crime scene investigation. He gave his opinion concerning the method and mode of entry. He testified that he checked leads on the location of the stolen property, had a lookout for a certain automobile, searched an apartment on the basis of a statement obtained from another trial witness who said he had joined defendant in the break-in, found goods there which matched serial numbers given him by the victim, and had the victim identify the seized items. He identified photos of the stolen property, which were then admitted in evidence. He was not excused at the conclusion of his testimony.

The police investigator and one of the jurors were good friends, on occasion meeting for lunch with their wives and socializing in the evenings. Despite the judge's instruction, they went to lunch together in the investigator's car. After lunch the defendant presented the rest of his case and the State called the investigator again in rebuttal, to testify that a certain witness had a bad reputation and he would not believe him under oath. That witness was an alibi witness for defendant.

While the jury was deliberating, defendant's counsel moved for a mistrial because a State witness and a defense witness both told him that the juror went to lunch with the investigator. The court inquired of the police investigator and then of the juror, the latter of whom was called out of the jury room and then returned to it with the caution that the matter not be discussed with the other jurors. This apparently occurred just about the time that the jury indicated it had a verdict. In the questioning, the extent of the friendship was established. Both parties stated they had not discussed the case. The juror said he did not understand the judge's instruction to mean he could not go to lunch with the policeman and that the contact did not affect his decision on the verdict.

The investigator was not asked whether he understood the court's lunchtime prohibitory instruction. The juror was not asked whether the jury had discussed his friendship with or knowledge of the officer or his opinion regarding the officer's veracity. None of the other jurors was asked whether they had seen the two together or

been influenced at all by the close connection between one of their number and one of the State's witnesses.

Communications between and among human beings occur by more than spoken or written words. Human beings are also influenced by much more than that which they hear or read. What they see not only conveys information but also creates impressions.

Even if in innocence the juror violated the court's instruction, the fact is that the expressly unpermitted contact occurred. It is not enough to say, just do not talk about the case. Else why would the fundamental, universally-invoked instruction be, do not talk at all? The law recognizes not only the subtle impact which even other-subject verbal communications can have on a person, but also the often inarticulable and unconscious effect one's actions can have on another. Thus there is to be no contact.

Here the investigator's testimony was important in connecting defendant with the crime and in destroying the credibility of the defendant's alibi witness. Thus his own credibility was in issue.

I do not believe it can be said, based on the evidence given below and the circumstances of this case, that there was no prejudice. The wall of separation between the police officer and the juror was formally established at the beginning of the trial when they each assumed their sworn functions as witness and juror. That wall crumbled when, in the midst of trial, they lunched together as good friends. It was not shown that the mind of the juror was thereafter unaffected by the unpermitted interruption of the separation. Nor was it shown that the other jurors were not affected by the event; if two witnesses saw the display of friendship when all were dispersed for lunch, it is not unlikely that the jurors did also. Whether they were more likely to believe the investigator because of his close ties to their colleague was not ascertained and may not be ascertainable.

That is precisely why the law requires distance. It was not observed here, by a clearly-instructed juror and by an experienced police investigator. It cannot be said that the juror, and the jury, were not subject to "outside influences," in the words of *Simmons v. United States*, 142 U. S. 148, 154 (1891), which were inherent in these circumstances.

Here there was more than actual impropriety, there was disobedience to the court's command. Even the appearance of impropriety maybe enough to require a new trial, as stated in *United States v. Hewitt*, 517 F2d 993 (3rd Cir. 1975), because of the infection it causes to the integrity of the judicial system. Here the public, and quite possibly the jury, learned that the wall of separation was ignored not only by a lay juror but also by a police witness, and the verdict was allowed to stand.

The holding in *Hardy v. State*, supra, is not controlling because

the circumstances differ materially. There, all persons involved were under oath, there were four persons including two who were not witnesses and not connected to the juror by close friendship, the witness was not a police officer who knew or should have known of the gross irregularity and whose involvement as an officer of the law cast a shadow on the sanctity of the system, there was no inference that other jurors were aware of it, and the irregularity was discovered before the jury began deliberations so the judge could warn the affected juror.

With reluctance, I would find an abuse of discretion. Although actual juror partiality may not have been shown, the circumstances are inherently prejudicial to defendant's Sixth Amendment right to an impartial jury, which he invoked. *Brooks v. State*, 244 Ga. 574 (261 SE2d 379) (1979). As pointed out, the irregularity was coupled with a number of opportunities for injury through the juror and the jury. *Smith v. State*, 218 Ga. 216 (126 SE2d 789) (1962). "In Georgia, it has been held that where an irregularity in the conduct of the juror is shown, the presumption is that the defendant has been prejudiced and the burden is on the state to rebut that presumption." *Martin v. State*, 242 Ga. 699, 701 (251 SE2d 240) (1978). That presumption was not sufficiently rebutted here so as to preserve the defendant's "fundamental right to a fair trial." *Martin,* supra.