70489. LAMONS v. THE STATE.
(335 SE2d 652)

DEEN, Presiding Judge.

A Cobb County jury found appellant Lamons guilty on one count of violating the Dangerous Drug Act, OCGA § 16-13-70 et seq., by selling pills containing amitriptyline; and on one count of violating the Georgia Controlled Substances Act, OCGA § 16-13-1 et seq., by selling ephedrine (a non-scheduled drug) on the express representation that it was a controlled substance, methamphetamine. Lamons was sentenced to a total of ten years' imprisonment, with probation after seven years, plus a fine. On appeal Lamons enumerates eleven errors having to do with the allegedly impermissible placing of his character in evidence; the denial of his motions for mistrial, a di-

rected verdict of acquittal, judgment notwithstanding the guilty verdict, and a new trial; and the general grounds. In reviewing these enumerations we have treated together those that are related to one another. *Held*:

1. Examination of the trial transcript reveals that a witness' unsolicited remark might arguably have been construed as reflecting adversely on the defendant's character when the defendant himself had not placed his character in issue: the witness stated that during one of the alleged drug transactions the defendant "appeared to be under the influence and said he had been taking the [amitriptyline] pills." The trial court sustained defense counsel's objection and gave the jury curative instructions. In view of the other competent evidence adduced, it seems highly probable that this error did not contribute to the conviction. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976); *Chester v. State*, 144 Ga. App. 717 (242 SE2d 356) (1978). Therefore, neither a mistrial nor a new trial was warranted on this ground, and appellant's seventh and eighth enumerations are devoid of merit.

2. Scrutiny of the record indicates that appellant's case did not meet the statutory criteria for a directed verdict of acquittal. OCGA § 17-9-1. Moreover, as the trial court correctly pointed out in its order of February 6, 1985, a motion for judgment notwithstanding the verdict is inappropriate in a criminal proceeding and when, as in this case, it is made in the alternative with a motion for new trial, it amounts only to the latter and should be treated as the equivalent of a motion for new trial on the general grounds. *Deen v. State*, 216 Ga. 387 (116 SE2d 595) (1960); *Russell v. State*, 155 Ga. App. 555 (271 SE2d 689) (1980). The record further reveals that the court below correctly denied appellant's motion for new trial. The first, second, tenth, and eleventh enumerations of error are without merit.

3. The record reveals that sufficient competent evidence was presented at trial to authorize a reasonable trier of fact to find appellant guilty as charged beyond a reasonable doubt. *Hampton v. State*, 250 Ga. 805 (301 SE2d 274) (1983). The appellate court assesses the sufficiency of the evidence, not its weight. *Barnes v. State*, 171 Ga. App. 478 (320 SE2d 597) (1984). Appellant's third and fourth enumerations of error are also without merit.

4. Study of the trial transcript reveals that the alleged misconduct involving a conversation between a prosecution witness and a juror was thoroughly explored by the court outside the jury's presence. Both the witness (who had called the conversation to the court's attention) and the juror were questioned, and it was established to the court's satisfaction that the conversation was unrelated to the case *sub judice*. See *Hardy v. State*, 242 Ga. 702 (251 SE2d 289) (1978); *Smith v. State*, 218 Ga. 216 (126 SE2d 789) (1962). No mis-

trial or new trial was authorized, and the fifth and sixth enumerations are without merit.

5. Also without merit is appellant's ninth enumeration of error, as examination of the entire record in this case reveals no reversible error of law.

*Judgment affirmed. Banke, C. J., McMurray, P. J., Birdsong, P. J., Carley, Sognier, Pope and Benham, JJ., concur. Beasley, J., dissents.*

BEASLEY, Judge, dissenting.

With respect to Division 4, I respectfully dissent.

On the second day of trial, after all the evidence was in and the court had denied defendant's motion for a directed verdict, and after defendant had rested without offering evidence and discussion began about charges, the district attorney brought to the attention of the court a phone conversation which the agent had with someone who had been present in court the day before but remained unidentified. The agent was the primary witness, had participated in the drug transactions being tried, and assisted the district attorney throughout the trial. The person had called the agent's office and left a number, and the agent called back. The caller provided drug information, and although the agent was unable to learn from the tipster her name, he had reasoned that it was a juror. He did not remind her they could not converse during trial. Pursuing his theory as to identity, inquiry was made at court and it was found that juror Watson had made the call. She explained in chambers that she wanted to give the agent information about drug possession involving her ex-boyfriend and others and did not want to wait until the trial concluded; she had refused to disclose her identity because she did not think it would be proper to reveal it in the course of the call, but she said she did intend to introduce herself to the agent following this trial.

After determining not to declare a mistrial, the court instructed the juror not to discuss with the other jurors the matter of the phone call or the nature of the court's inquiry. She returned to the jury, closing arguments were made, and the court charged the jury. Since the juror had been late that morning, it was thought that the jury would understand that subject to have been the reason for the conference.

The impartiality of the jury is paramount to a fair trial and is scrupulously protected by the court, both by the often lengthy voir dire procedures in choosing a jury in the first place and in guarding the climate surrounding the jury while it is serving. The object is to assure that no influence, direct or indirect, can invade that zenith of impartiality.

"The policy of the law is to protect jurors from all [public opin-

ion] influences and temptations in the trial of criminal cases, as well as defendants who may be injured thereby." *Daniel v. State*, 56 Ga. 654, 655 (1876). While in that case the principle was applied to the possibility that the juror heard expressed the opinion of members of the public gathered at the courthouse, the principle would apply to any influences outside the evidence presented at the trial which might affect the impartiality of the jurors' decision-making process. Because influences on human minds are numberless, often subtle, frequently undiscernable, and effective to different degrees and in different ways on each mind, much is done to insure against the introduction of any extraneous fact or pressure which might affect the impartial, reasoned, and grounded decision of the jury. The rules of evidence are a broad example. The rule of sequestration is another. A third is the firm cautionary instruction given to jurors at the outset against talking with any witness, such as was given here. The principle is so fundamental that it has been jealously guarded, even to the extent of requiring new trials when the bailiff did not remain awake while the jurors were in his care overnight. See *Smith v. State*, 218 Ga. 216, 219-221 (2) (126 SE2d 789) (1962), discussing several of these cases. Principles applicable here are recited in the *Smith* case: " 'a mere trifling and immaterial irregularity in the conduct of a juror will not require the grant of a new trial . . . an irregularity without opportunity for injury will not require the grant of a new trial' . . . the State . . . [has] the burden of showing that the defendant sustained no injury." *Smith v. State*, supra at 223.

Another authority cited in *Smith* is *Monroe v. State*, 5 Ga. 85 (1848), where Justice Lumpkin wrote: "there are certain legal safeguards which must be preserved immaculate; the purity of the stream of justice is involved in it. One of these safeguards is, that the jury shall be impartial and unbiased [sic]; their minds free from pre-judgment. It is desirable, if practicable, that every juror's mind should be as white as paper . . . whenever the juror evinces a predetermination to condemn, an adjudication before trial or verdict, without regard to the evidence, it is a mis-trial per se; . . ." Id. at 139-140. There the subject was a juror's expression of apparent prejudgment. The same principle would apply here, where the juror's mind was affected in the midst of trial, long before jury deliberations and verdict, by having finally found a listening law enforcement ear after having been frustrated in her attempts to alert the law about drug activities she had on her mind.

The accommodating listener was the crucial witness for the state in a case the juror was yet to judge, and that receptive person's credibility particularly with regard to precisely the words which were spoken between himself and defendant was a key issue. A confidential relationship had been established, and this juror's satisfactory experi-

ence with the witness, which relieved her mind, constituted for her additional extrajudicial evidence upon which she could judge the witness' testimony. That evidence was not even subject to cross-examination, much less disclosure to the rest of the jury. Since she was expressly prohibited from acquainting her fellow-jurors with it for fear of it affecting them, how then can it be said that it did not affect her, the actual instigator and participant? She had sought help and she had finally gotten it, and thus her confidence in the witness was buttressed and arguably strengthened. How can it be said that her attitude towards judging the witness' testimony remained unbiased, especially when in her presence the agent protected her by refusing to violate the confidentiality of the information she had related?

Thus the fact that they did not talk about this case cannot be the end of the inquiry. Influences arise from more than mere words. The context and circumstances here cannot be ignored. In addition to the state-prone influences brought about by the juror's call, influences negative to defendant were forced on him by the inquiry in the court's chambers. There, through counsel, he was faced with challenging and cross-examining the juror as to the phone conversation and her impartiality, an antagonistic posture counsel recognized as dangerous and one occasioned by the juror herself. In addition, she stood to gain in the outcome of the trial, for she could surmise that a guilty verdict would be pleasing to the very person to whom she looked expectantly for action regarding other drug activities she knew about.

"In Georgia, it has been held that where an irregularity in the conduct of the juror is shown, the presumption is that the defendant has been prejudiced and the burden is on the state to rebut that presumption. See *Smith v. State*, supra; *Daniel v. State*, 56 Ga. 653 (1876); *Monroe v. State*, 5 Ga. 85 (1848)." *Martin v. State*, 242 Ga. 699, 701 (251 SE2d 240) (1978). The circumstances here, including the state's refusal to divulge all of the conversation, understandable but nevertheless enhancing the relationship between the witness and the juror, require enforcement of the unassailable prohibition against communication between juror and witness. Adherence is fundamental to a fair trial.

See also *Smith v. State*, 173 Ga. App. 889 (328 SE2d 553) (1985) (dissent).

There are actually three interests which must be tended to in dealing with the problem which developed by virtue of the telephone conversation. One is the defendant's right to a fair trial by an impartial jury. The second is the integrity of the system of justice as administered in this state and the appearance as well as the actual propriety of the proceedings. What perception is being created when a trial is allowed to progress despite a juror's intentional conversation with a key witness? Third is the inviolability of court orders. May they be

ignored or disobeyed without sanction as here, creating a weakening of the court's authority through deliberate superimposition of the orderee's own judgment? In order to give meaningful security to these three interests, strict application of the principle is deserved.

DECIDED SEPTEMBER 12, 1985 —
REHEARING DENIED OCTOBER 2, 1985 — 

*Edward C. Stone*, for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, James F. Morris, Assistant District Attorneys*, for appellee.